(Decided November 2nd, 1861.)

---

## The Mutual Fire Insurance Company in Baltimore County, *vs.* William Grove Deale.

If a father purchase property in the name of a son, or a husband in the name of his wife, it is, *prima facie*, an advancement or provision, and no presumption of a resulting trust arises from the fact of the payment of the purchase money.

But, in such cases, the *prima facie* presumption of an advancement or provision, may be rebutted, and a resulting trust established, by sufficient evidence manifesting a clear intention, that the grantee in the conveyance shall take as trustee.

Declarations of the husband, made more than two years after the conveyance to the wife, are not admissible for the purpose of affecting the legal title conveyed to the wife, and of establishing a resulting trust in the husband,

Any evidence to displace the title of the nominee, unless founded on his own admission or declaration of trust, must be cotemporaneous with the purchase: subsequent acts or declarations of the purchaser, or any other matter arising *ex post facto*, though of the most unequivocal and conclusive description, are inadmissible for such purpose.

Mutual Ins. Co. in Balt. County, *vs.* Deale.

A deed of real estate, to a married woman, under the act of 1842, ch. 293, sec. 1, vests her with the legal estate in fee, but not to her sole and separate use: in such property the husband still retains his marital rights, and such interest of the husband is an insurable interest.

In an ordinary contract of insurance, the interest of a husband in property conveyed to his wife, would be covered by an insurance of the property as *his*, and his omission to state the nature and extent of his interest, where no inquiry is made on the subject, will not avoid the policy.

But in the case of a *mutual insurance* company, whose charter, to which the insured was bound by the contract of insurance, makes all premium notes liens on the real estate of the assured, to meet losses, the title of the assured is a most important consideration of the contract, and a material misrepresentation or concealment, in regard to it, will render the contract void.

A mutual insurance company, whose charter gave it "full power and authority to make insurance on *any kind* of property," may insure the interest which a husband has in property conveyed to his wife.

Where a party, in his application for insurance in a mutual insurance company, called the property "*his property*," and the policy refers to such application, this does not constitute a *warranty* on his part, that he held the fee-simple thereto, unincumbered, a breach of which, by the existence of the legal title in his wife, would render the policy void.

Whether a misrepresentation or concealment by the assured, in a mutual insurance policy, of the true nature and extent of his interest in the property insured, will avoid the policy, depends upon its materiality to the risk, and the question of materiality is a question of fact to be submitted to the jury,

In the case of a mutual insurance company, where there is a lien created on the property insured, a representation or concealment, as to title, may be material to the risk, which would not be so in an ordinary case, but its materiality is a question for the jury, and the court cannot assume it as a matter of law.

The defendant (the company) has a right to ask for a specific instruction, directing the attention of the jury to the particular fact in which the alleged misrepresentation, or concealment, existed.

An insurance company is not chargeable with notice at the time of insurance, if the state of the title to the premises insured, as disclosed by the land records, so as to prevent its relying, in order to defeat the action on the policy, on any objection to the title of the assured, which might have been ascertained by inspection of such records.

Where a stockholder and agent of an insurance company, filled up, at the request of the assured, an application for insurance, and presented it to

the company, he is a competent witness for the company to testify as to such matters, for he was therein the *agent of the assured.*

*Assumpsit* is the proper remedy upon a contract, not under seal, for additional insurance, endorsed on a policy: there being nothing in the original covenant continuing it in force as a specialty, and binding the company, by subsequent endorsements of additional insurance.

APPEAL from the Circuit Court for Anne Arundel County.

*Covenant,* brought the 12th of November 1855, by the appellee against the appellant, on a policy of insurance issued and dated the 22nd of April 1852, insuring the plaintiff against loss or damage by fire to the amount of $2300, on a frame dwelling, &c., "as per application." ·

In the application the plaintiff offered for insurance *"his* property" on Rhode River, in Anne Arundel county, and also assented to the charter, constitution and by-laws of the company, and the policy recites, that he had become a member of the company agreeably to said charter, constitution and by-laws. The charter, (Act of 1849, ch. 213,) by its 1st section gives the company "full power and authority to make insurance on any kind of property;" by sec. 4, the premium notes are made "a lien on any real estate" insured; and by sec. 14, any married woman, with the assent of her husband, may apply for, and have insurance on, her property. By endorsements on the policy, additional insurance was granted by the company as follows: on the 15th of December 1853, $2800 on building, furniture, stable, barn and contents; on the 18th of November 1854, $1000 on building attached to the dwelling insured by the policy. In both the applications for these additional insurances it is stated, that the plaintiff holds *"the legal title"* to the property asked to be insured. The property insured was totally destroyed by fire on the 6th of December 1854, and the plaintiff brought three suits against the company, one (the present) of *covenant* on the insurance in the body of the policy, and two of *assumpsit,* to recover on the additional insurances endorsed on the policy. These suits were originally brought in the Circuit court for Baltimore county,

and were removed, on suggestion of the defendant, to the Circuit court for Anne Arundel county for trial.

The defendant pleaded, 1st, a material change of occupation of the building by occupying it as a boarding school, without the notice of such change to the defendant, as required by the 8th condition endorsed on the policy; 2nd, the plaintiff was not the owner of the property, by reason whereof, the premium note was not a lien thereon; 3rd, that the plaintiff was not the owner of the property at the time the policy was executed; 4th, that the plaintiff at the time the policy was executed, represented to the defendant that the property was his, and the policy was executed by the defendant upon the faith of such representation, whereas, in fact, it was not the property of the plaintiff. Issues were joined upon replications to these pleas, and, at the trial, exceptions were taken by both parties.

*1st Exception.* On the part of the plaintiff the policy and its endorsements, the applications, the premium notes and receipts for interest paid thereon, the constitution and by-laws of the company, (which are sufficiently stated in the opinion of this court,) the loss by fire, the value of the building insured in the body of the policy, and compliance with the constitution and by-laws, in giving notice and furnishing preliminary proof of the loss, were offered in evidence and proved. He also proved that, at the time of effecting the original insurance, and continually up to the time of the fire, he was in possession of the property, residing there with his wife and seven children.

On the part of the defendant it was proved that, at the time of the fire and for more than a year previous, the plaintiff kept a school in the house insured, and that two rooms were used for such school in which fires were kept. The defendant then offered in evidence a deed, dated the 18th of July 1850, by which Speed and Waters conveyed to Jeanetta S. Deale, the wife of the plaintiff, the property described in the policy for the consideration of $8000, which deed was duly recorded among the land records of Anne Arundel county.

30        MARYLAND REPORTS.

Mutual Ins. Co. in Balt. County, vs. Deale.

The plaintiff then proved by Winterson, the acting agent of the company in Anne Arundel county in 1853 and 1854, that at plaintiff's request he filled up for him the applications of the 15th of December 1853, and the 18th of November 1854, the blanks of said application having been produced by witness; that he received the premium notes for such insurances, and at the time of the last insurance, witness knew a school was kept in the house by the plaintiff, and, in the opinion of witness, the risk was not materially increased thereby; and that the interest on the premium notes, both for the original and additional insurances, up to January 1st, 1855, was paid by the plaintiff and received by the defendant in 1854.

The plaintiff then, for the purpose of showing that he had, at the time of obtaining the policy, an insurable interest in the property in the nature of a resulting trust, proved by George W. Jones, subject to exception as to the admissibility of the evidence, that he witnessed a written contract between Waters and the plaintiff, made in California, dated the 28th of January 1850. By this contract, which was offered in evidence, Waters agreed to sell and have conveyed to the plaintiff the property in question for $12,000, of which, $6000 was to be paid in cash, and the balance in credit payments secured by mortgage, the plaintiff to have the privilege to avoid the contract, if he desired, upon examining the property. The cash payment of $6000 was paid by the plaintiff to Waters at the time, and the receipt therefor, was attested by the witness Jones. This witness then proved that, he afterwards came from California to Maryland, and examined the farm in company with Mrs. Deale, the plaintiff's wife, and became satisfied it was not worth $12,000, and then made a bargain for it with Waters, who had also returned from California, for Mrs. Deale, for $8000, of which the $6000 already paid by the plaintiff was computed as a part, and the residue was paid in money derived from or belonging to the plaintiff, and that the deed was made to Mrs. Deale by direction of witness, after consultation with some of her friends, who advised it should be so

made; that after the plaintiff returned some time in the summer of 1852, a conversation occurred between him and witness, in which the former objected, and said he was sorry that the property had been conveyed to his wife and not to himself. This witness also further states that, before he left California, some conversation took place between him and the plaintiff, as to whether the deed should be made to the plaintiff himself, or to his wife, and the plaintiff left it optional with witness to have the deed made to either, as witness should think best, and it was by reason of this discretion reposed in witness that he directed the deed to be made to Mrs. Deale; that witness was influenced in giving this direction by the long distance of the plaintiff from home, and his precarious state of health. The defendant still objected to the admissibility of all this evidence, but the court, (BREWER, J.,) overruled the same and permitted it to go the jury, and to this ruling the *defendant* excepted.

*2nd Exception.* After the witness Jones had given the evidence stated in the preceding exception, the plaintiff proved by A. Randall, Esq., that some time in October 1854, the plaintiff stated to him that he desired to have some property, the legal title to which was in his wife, transferred to himself, and desired to know how it could be done; that witness advised him how it could be done, and the plaintiff then said he would furnish the papers to witness, but witness heard nothing further from him on the subject. The defendant objected to the admissibility of this evidence, but the court permitted it to go the jury, and to this ruling the *defendant* excepted.

*3rd Exception.* The defendant then proved by Carman, that, in 1852, he was its agent in Anne Arundel county, soliciting insurances and receiving applications; that in April of that year he called on the plaintiff, and remained at his house over night, that a good deal of conversation occurred between them in reference to insurance in this company; that plaintiff desired witness to fill up an application for him, and witness accordingly filled up the blanks in the application of the 22nd of

April 1852, which was signed in his presence by the plaintiff, and witness received from him the premium note of that date, and transmitted the application to the secretary of the defendant; that the proposal of the plaintiff being accepted, the policy was sent to witness who delivered it to the plaintiff, the latter paying witness at the time the cost of the policy and the interest in advance on the premium note; at that time nothing was said to witness to lead him to suspect, that the plaintiff was not the owner of the property by a legal title; he said nothing to witness about the title being in his wife, or in any other person; before witness filled up the blanks in the proposal, he fully explained to the plaintiff the principles upon which the company made insurances, and recognized him as the *bona fide* owner of the property. Before this witness was examined, the plaintiff proved by him, that he had a policy or insurance then subsisting in this company, and was a stockholder therein, and objected to his competency to testify for the defendant, but the court overruled the objection and permitted the witness to testify as above stated, to this ruling the *plaintiff* excepted.

*4th Exception.* Upon all the evidence in the cause the plaintiff offered prayers, in substance as follows:

1st. If the jury find that the plaintiff purchased the land, mentioned in the policy, from Waters, under the California contract of 1850, and that such contract was executed by the parties, and the purchase money was fully paid and satisfied to Waters by or out of the moneys of the plaintiff, and that at the time the deed was executed to Mrs. Deale, the plaintiff was in California, and that this deed was so taken to Mrs. Deale and not to the plaintiff, by direction of the witness Jones, who was acting in this behalf as a friend of the plaintiff, it is competent for the plaintiff to show, in this action, that he purchased said land for his own use, and that he did not intend it should be conveyed to his wife as a provision for her; and if the jury find the above facts, and further, that Jones in directing the deed to be given to Mrs. Deale, believed he had a

discretionary power to direct the manner in which the property should be conveyed, and gave such direction after advising with friends of the family, and chiefly, because of the distance from home of the plaintiff and of his precarious state of health, and after his return to this State the plaintiff expressed his dissatisfaction that the deed had been taken in the name of his wife and not in his own name, and that afterwards he consulted with A. Randall, an attorney of this court, how to effect a transfer of the title to said land from his wife to himself, and after receiving advice from him, promised to collect and take to said Randall the papers which he required to enable him to prepare the requisite instruments to effect such transfer, then these facts, if found, will warrant the jury in finding that the plaintiff purchased said land for his own use, and did not intend it should be conveyed to his wife as a provision for her; and, in the event of such finding, the plaintiff at the time the policy was executed, and of making his proposal for insurance, if they find such proposal was made and policy executed, had an interest in the lands and buildings thereon, which was insurable within the charter, constitution and by-laws of the defendant, and sufficient to sustain said contract of insurance as an obligation of the defendant.

2nd. If the jury find that at the date of the deed to Mrs. Deale, she was the wife of the plaintiff and had children by him living at the date of the execution of the policy, (if they find its execution,) then, that the plaintiff at that time and at the time of his proposal for insurance, (if they find such proposal was made,) had an interest in the premises so conveyed to his wife, insurable and sufficient to sustain the policy as an obligation of the defendant.

3rd. If the jury find the execution of the policy in the manner offered in evidence by the plaintiff, then the defendant is chargeable with notice of the state of the title to the premises insured as disclosed by the land records of Anne Arundel county, at the time of the application for the insurance, and the defendant cannot rely on any objection to the plaintiff's

v.18

title which might have been ascertained by an inspection of such records, to defeat the plaintiff's recovery in this action, if his right to recover is, in all other respects, made out by the evidence to the satisfaction of the jury.

The defendant then offered prayers, in substance as *follows*:

1st. If the jury find the execution and issual of the policy on the day of its date, and that it was based on the application of the plaintiff offered in evidence, and that at the time of such application and issual of the policy, the charter, constitution and by-laws of the defendant then in force, were such as have been offered in evidence, and shall further find the execution and recording of the deed of the 18th of July 1850, and that the plaintiff knew thereof at the time aforesaid, and shall not find that the same was known to the defendant or its board of directors, or to any of its directors, or to any officer or agent of the defendant; and that said deed was executed to Mrs. Deale by the direction and with the approbation of the witness Jones, and that before the same was executed, the plaintiff had authorised said Jones to direct the property to be conveyed either to the plaintiff or his wife, as he, the said Jones, at his option should decide, and that this authority so given by the plaintiff to said Jones, was not revoked or countermanded in any manner, and that the plaintiff had full knowledge of the fact that the property had been so conveyed to his wife before he made his said application, then the plaintiff is not entitled to recover.

2nd. If the jury find that the property was conveyed by the deed of 1850, to Mrs. Deale, by direction of the witness Jones, and that he had been and was then fully authorised by the plaintiff to have the same conveyed to Mrs. Deale or the plaintiff, as in the exercise of his discretion he should deem best, and that in the exercise of his discretion, said Jones did decide and determine, and directed and caused the same to be conveyed by said deed to Mrs. Deale, and that she was then, and is now, the wife of the plaintiff, then the plaintiff cannot validly or lawfully claim that the property at the time the policy

was executed and issued, was his property upon the theory of a resulting trust, even if they should find that the purchase money therefor was provided by him.

3rd. If the jury find the execution and issual of the policy on the day of its date, and that it was based on the application of the plaintiff offered in evidence, and at the time of such application and execution and issual of the policy, the charter, constitution and by-laws of the defendant were those offered in evidence, and that the deed of July 1850, was executed, delivered and recorded, as offered in evidence, and that the plaintiff knew at the time aforesaid, that said deed had been so executed, delivered and recorded, and shall not find that the same was known to the defendant, or to its board of directors, or to any of its directors, or to any officer of the defendant, then the plaintiff is not entitled to recover.

4th. If the jury find the facts stated in the preceding prayer, and further, that said Mrs. Deale was, at the time when the policy was issued, the wife of the plaintiff, then the plaintiff is not entitled to recover.

5th. If the jury find the facts set forth in the third prayer, and that after the issual of the policy and before the fire, the dwelling house insured was occupied continuously for and as a school house with the knowledge and consent of the plaintiff, and without any notice to, and without the knowledge or consent of, the defendant or its secretary, or any of its directors, and shall further find that such use of the house as a school house was a change of occupation thereof, and that such change was a material increase of risk to the property, then the plaintiff is not entitled to recover.

6th. If the jury find the facts stated in the third prayer, and further, that the fact that the legal title to the property insured was not in the plaintiff, but in Mrs. Deale, was a material fact in obtaining an underwriting of the policy to enable the defendant to decide whether it would underwrite the same, then the plaintiff is not entitled to recover.

7th. If the jury find the execution of the deed of 1850, and

that the grantee therein, Mrs. Deale, was, at the time, the wife of the plaintiff, and that said deed was so executed and delivered by direction of Jones, under authority for that purpose conferred on him by the plaintiff, and that the consideration money therein mentioned, was paid and satisfied in the manner stated by said Jones, then said deed to Mrs. Deale is *prima facie* to be considered as a provision for her, and the burden of proof is on the plaintiff to show by other evidence that said deed is not to be so considered.

8th. If the jury find the facts set forth in the preceding prayer, and that said deed was executed and delivered by authority of the plaintiff, then, as against the plaintiff, said deed was valid and effectual to vest in Mrs. Deale the property therein mentioned, even if the jury shall find the plaintiff expressed regret that said deed had been made to his wife, and that he contemplated the execution of other conveyances so as to vest the title to the said property in himself.

9th. If the jury shall find from the evidence that the plaintiff in obtaining this policy misrepresented to, or concealed from, the defendant or its agent, any fact in reference to his title to the property insured, and shall also find that the fact so misrepresented or concealed, was material to be known and considered by the defendant in *deciding* whether it would underwrite such policy, then the plaintiff is not entitled to recover.

10th If the jury shall find from the evidence all the facts stated in the plaintiff's first prayer, the finding of said facts does not require them to find a verdict for the plaintiff.

11th. If the jury shall find from the evidence all the facts stated in the plaintiff's second prayer, the finding of such facts does not require them to find a verdict for the plaintiff.

The court granted the plaintiff's *first* and *second*, and rejected his *third* prayer, and also granted the defendant's *fifth*, *seventh*, *eighth* and *ninth*, but rejected its *first*, *second*, *third*, *fourth* and *sixth* prayers. The defendant's *tenth* and *eleventh* prayers were granted by consent of the plaintiff. *Each party*

excepted to the adverse rulings upon these prayers, and the verdict and judgment being in favor of the plaintiff, the defendant appealed.

The cause was argued before LE GRAND, C. J., BARTOL, and GOLDSBOROUGH, J.

*I. N. Steele* and *Wm. Schley,* for the appellants.

1st. The deed to Mrs. Deale conveyed the legal title to her, and was directed to be so made by Jones, in pursuance of authority from her husband, the plaintiff, and if the jury so found, then the mere fact of the payment of the purchase money by the husband, did not in point of law create a resulting trust in his favor, but the deed is to be considered *prima facie,* as a provision for the wife;—such is the presumption of law upon the face of the transaction. *Hill on Trustees,* 96 to 98, 101 to 104. 2 *Story's Eq.,* secs. 1202, 1203, 1204. 1 *Spence's Eq.,* 452. It is true, this presumption may be rebutted and a resulting trust established by parol proof, but the evidence for this purpose must be competent and legal evidence in its character and quality, and be sufficient, when thus specially offered, to establish the trust. Declarations of the husband, not contemporaneous with the transaction, not forming part of the *res gestæ,* but made years after the execution and delivery of the deed, such as those testified to by Jones and Randall in this case, are totally inadmissible for that purpose. *Hill on Trustees,* 105. 18 *Ohio,* 424, *Tremper vs. Barton.* Nor are *previous* designs and contracts, not carried into execution, *but expressly abandoned,* sufficient for this purpose. The offer of the evidence on this point, on the part of the plaintiff, in the first exception, was of the whole blended facts unaccompanied by any offer to follow it up with other testimony; it was offered for the purpose of showing an insurable interest in the nature of a *resulting trust;* it was admitted for that purpose, and *as sufficient* for that purpose, for its admission under this offer decides its sufficiency for the

38 MARYLAND REPORTS.

Mutual Ins. Co. in Balt. County, *vs.* Deale.

purpose for which it was offered. If, therefore, it was inadmissible *for that purpose,* as we have show it to be, it should have been rejected. *7 Md. Rep.,* 582, *Pegg vs. Warford.* If these views are correct, it follows that the rulings of the court below, in the first and second exceptions, were erroneous. The granting of the plaintiff's first prayer was also erroneous, if for no other reason, because it relies upon this insufficient and inadmisible testimony. The defendant's second prayer should, for the above reasons, have also been granted.

2nd. The appellant being a *mutual* insurance company, by whose charter (Act of 1849, ch. 213, sec. 4) the premium notes are liens on all real property for the insurance of which they are given, the *title* of the applicant for insurance is a *material* fact to enable the company to judge of the sufficiency of the security which it will have for the premium note if it should underwrite the risk proposed. In the case of an ordinary insurance it may be true, that, in the absence of inquiry, the failure to disclose the extent of his interest, where the assured has but a limited or partial interest, will not avoid the policy, (14 *Md. Rep.,* 298, *Franklin Fire Ins. Co., vs Coates and Glenn,)* but a different rule prevails in the case of a mutual insurance company. In such case the insured, by the contract of insurance, becomes a member of the company, and the charter, constitution and by-laws of the company form a part of the contract between the assured, his fellow corporators and the company. In his application *for insurance, the* appellee offered the property for insurance as *"his property,"* (thereby asserting in himself a legal title in fee-simple unencumbered,) and assented to the charter, constitution and by-laws of the company, and this application was expressly referred to and adopted in the policy, which constituted a *warranty* that the property was *his,* and this warranty was broken by showing the existence of the legal title *in his wife,* even if he had an interest by way of a resulting trust, or as tenant by the curtesy, or if not, under the circumstances a warranty, was, at least, upon the hypothesis of fact as to title assured by the de-

fendant's first, third and fourth prayers, a misrepresentation or concealment by means of partial disclosure, if material facts as to the title by which the policy was avoided. In support of these positions, see *Angell on Ins.*, secs. 10, 67, 139 to 141, 182, 183, 188, *et seq.* 1 *Philip on Ins.*, 346, 347, and cases there cited. 2 *Duer on Ins.*, 580, 581, 687, 688. 8 *How.*, 235, *Clark, et al., vs. Manufacturers Ins. Co.* 3 *Hill*, 501, *Robert vs. Chenango Ins. Co.* 5 *Denio*, 326, *Egar vs. Mutual Ins. Co.* 1 *Pet.*, 189, *McLanahan vs. The Universal Ins. Co.* 1 *Story's C. C. Rep.*, 57, *Carpenter vs. American Ins. Co.* 22 *Pick.*, 203, *Bryant vs. Ocean Ins. Co.* 6 *Cush.*, 340, *Davenport vs. Mutual Ins. Co.* 6 *Cush.*, 448, *Smith vs. Mutual Ins. Co.* 10 *Cush.*, 587, *Friesmuth vs. Mutual Ins. Co.* 8 *Metc.*, 114, *Houghton vs. Ins. Co.* 6 *Gray*, 221, *Sawyer vs. Ins. Co.* 7 *Gray*, 373, *Jenkins vs. Mutual Ins. Co.* 28 *Maine*, 252, *Brown vs. Williams and Mutual Ins. Co.* 40 *Maine*, 587, *Pinkham vs. Morang.* 4 *Foster*, 259, *Leathers vs. Mutual Ins. Co.* 7 *Foster*, 157, *Marshall vs. Mutual Ins. Co.* 1 *Gilman*, 236, *Mutual Ins. Co., vs. Manf. Co.* 7 *B. Monroe*, 470, *Addison et al., vs. Ins. Co.* 5 *Call.*, 517, *Mutual Ins. Co., vs. Mahon.* 12 *Md. Rep.*, 377, *Augusta Ins. Co., vs. Abbott.* In the case of *Allen vs. Mutual Ins. Co.*, 2 *Md. Rep.*, 111, the only question presented and decided was, as to the *power* of the company under its charter to insure the particular interest there offered for insurance, and no question was there raised, as to warranty, or misrepresentation or concealment of title, or the extent of interest held by the assured. Here the charter, constitution and by-laws, formed, as we have said, a part of the contract of insurance, and the charter makes it *material* that the interest which the assured held in the property should be disclosed, and whether he so disclosed or concealed it upon the facts proved, is a question of law—a question of construction upon the charter and policy—to be decided by the court, and not to be left to the jury. We insist, therefore, there was error in the refusal of the defendant's first, third and fourth prayers.

3rd. The defendant's sixth prayer should have been granted, because even if the policy was not void upon the grounds stated above, still the plaintiff was not entitled to recover in this action upon the hypothesis of fact stated in this prayer, *if the jury should find* that the fact, that the legal title was not in him but was in his wife, was a *material* fact to enable the defendant to decide, whether it would or not assure the risk, upon the mere note of the plaintiff, and waive the lien. It is to be observed on this point, that the granting of the defendant's ninth prayer, which left the general question of misrepresentation and concealment, as to title, to the jury, was virtually nullified by the refusal of this sixth prayer, and by the granting of the plaintiff's first and second prayers. In this sixth prayer the question of materiality to the risk of the representation or concealment of title, is left to the jury, and the prayer is unobjectionable in this respect. *Angell on Ins.*, secs., 152, 175. 20 *New Hamp.*, 551, *Boardman vs. Mutual Ins. Co.*

4th. The plaintiff's first prayer ought not to have been granted for other reasons. Firstly, it affirms, as law, that upon the *enumerated facts*, (being only a *part* of the evidence,) if found by the jury, the plaintiff is at liberty to show that he did not intend the land to be conveyed to his wife as a provision for her. Secondly, it affirms, as matter of law, that if the jury find such enumerated facts, and certain other specified facts, they were warranted in finding that the plaintiff purchased the land for his own use, and that he did not intend the same should be conveyed to his wife as a provision for her. And thirdly, that in case of such finding, then, as matter of law, the plaintiff had an insurable interest in the land and buildings thereon, within the provision of the charter, constitution and by-laws of the defendant; and sufficient to sustain the policy issued on the application of 1852, as an obligation of the defendant. If any proof, not embodied in this prayer, would establish a proposition inconsistent with the theory of this prayer in any of its branches, it ought not to

have been granted. It is, in fact, in the nature of a demurrer to all other evidence. 7 *Md. Rep.*, 352, *Mc Tavish vs. Carroll*. Now the jury might well find, *upon the whole evidence*, that the plaintiff intended the property to be conveyed to his wife, as a provision for her, if Jones in the exercise of his discretion thought it expedient, and that Jones in fact so determined. The prayer, in effect, told the jury, that they were warranted in finding contrary to their belief, that the plaintiff did not intend the property to be conveyed to his wife as a provision for her. But the prayer is involved, and calculated to mislead the jury. The issues joined related not to any question merely of *insurable interest*, but to the *ownership* of the property. The evidence of Jones was offered expressly to establish a *resulting trust*, whilst the prayer makes it the basis on which to found a claim of *insurable interest*. The offer and use of the evidence are not *ad idem*.

4th. The plaintiff's second prayer ought not to have been granted. It is based on the theory of ownership in the wife, and affirms that the husband of a woman (there being living children of the marriage) has a right to insure property as his own, in this company, without her concurrence or consent, and without notice to the company that he is not the owner in fee. This is contrary to the charter, constitution and by-laws of the company. The 14th section of the charter expressly provides for the insurance of the property of a married woman in the mode there directed, and in no other way can such property be insured under the charter of the company.

*F. H. Stockett* and *Thos. S. Alexander*, for the appellee.

The questions to be decided in this case arise solely upon the rulings of the court below in the admission of evidence, and upon the prayers. No question arises upon the pleadings, no such point having been raised in the court below, the prayers not making any reference whatever to the pleadings. 1 *Gill*, 227, *Leopard vs. Canal Co.* 11 *Md. Rep.*, 347, *Richardson vs. Milburn.*

If the plaintiff had an interest in this property, either by way of a *resulting trust*, or as tenant by the curtesy, it was an *insurable interest* which this company had power under its charter to insure. The case of *Allen vs. The Mutual Ins. Co.*, 2 *Md. Rep.*, 111, is conclusive upon this point, the provisions of the two charters being in this respect identical. See also 10 *Cush.*, 37, *Converse vs. Mutual Ins. Co.* Now we say, that Deale had an interest in this property, *first*, by way of a *resulting trust*. The agreement of January 1850, shows that he purchased the land and then paid $6000 of the purchase money, and the other proof shows that the whole purchase money was provided and paid by him. The deed was made to the *wife*, and the presumption from this fact is, that it was a settlement on the wife, but this presumption is liable to be *rebutted*, and this has been fully done by the testimony in the case. *Hill on Trustees*, 103. 1 *Younge & Coll.*, 65, *Scawin vs. Scawin.* 14 *Ala.*, 796, *Butler vs. Ins. Co.* It is to be observed here, as to the rulings upon the admission of the evidence, that where an offer is made generally, of a mass of evidence complex in its character, and the whole of it is objected to, if any part be admissible there is no error in overruling such general objection, and such is the nature of the offer and objection in the first and second exceptions in this case. 11 *Md. Rep.*, 537, *Carroll vs. Granite Manf. Co.* 13 *Md. Rep.*, 408, *Berry vs. Matthews, et al.* But *secondly*, the plaintiff had, at all events, an interest as tenant by the curtesy. *Schindel's cases* in 12 *Md. Rep.*, 108 and 294, show that the recent Acts of Assembly, though allowing a married woman to receive property by deed, do not interfere with the marital rights of the husband. Such an interest in the husband was an insurable interest, and indeed it was admitted, that Deale's interest in this property was an insurable interest under the terms of the charter, constitution and by-laws of the defendant.

The question then is, did Deale properly state his interest in the property? The finding of the jury negatives all *fraud, misrepresentation* or *concealment* of any material fact, as to title,

for the *ninth* prayer of the defendant involving these points was *granted* by the court below. Did then the *representation* of the property in the application, as *"his property,"* avoid the policy? Nothing was said about the title at the time of the application—nothing was said about the wife—and the inference is that no inquiry was made on that point by the defendant's agent, for if there had, can it be supposed that Deale would not have said, "the title is in my wife's name, and I will take the insurance in her name under the 14th clause of your charter?" Carman was the *agent* of the defendant and not of the insured, and in making out and receiving the application for the insurance, he was the agent of the defendant, soliciting insurances; he had with him the printed forms of application in blank, and filled one of them up for this plaintiff, and a plainer case of purposed fraud derived from this printed form of application and policy, in connection with the *defences* set up in this case, can scarcely be imagined. It deserves the severe rebuke, administered by this court to insurance companies in *Crane's case*, in 16 *Md. Rep.*, 295, 296. There is nothing in *this charter* showing the application shall be considered the *representation* of the assured; nor is there any thing in the *conditions of the policy*, or in the constitution and by-laws of the company, requiring the assured to show his title, or requiring any thing to be said of title at the time of application for insurance, and avoiding the policy if such disclosures are not made, or are not correctly stated; and in such a case an unintentional misstatement of the true legal title, the party having an insurable interest in the property, will not avoid the policy. 7 *Foster*, 166, 167, *Marshall's case*. 14 *Penn. State Rep.*, 395, 396, *Satterthwaite's case*. Representation is not *warranty*, the rule of law is directly the reverse of what it is stated to be by the other side. 14 *Barb.*, 383, *Wall's case*. 1 *Sandf.*, 551, *Niblos's case*. 12 *Md. Rep.*, 348, *Abbott's case*. 20 *New Hamp.*, 551, *Boardman's case*. 1 *Smith's Lead. cases*, 638. Now what is the character of the representation made by Deale, as to the title? The application only *individuates*

the property from that of his neighbors. It is not an affirma-
tion of seizen *in fee* of the land:—"his property"—"my pro-
perty"—mean in common parlance not a fee-simple, in the
sense that it is false if the party holds under a lease  instead of
having the fee. The law gives no such interpretation to such
a description. The cases referred to in support of such a posi-
tion are special cases upon special charters. In *Leathers' case,*
4 *Foster,* 259, the charter provided, if the assured had a less
estate than a fee-simple the policy should *be void,* unless the
true title of the assured was expressed therein. On the other
hand, in *Clapp's case,* 7 *Foster,* 143, where the rules of the
company required the applicant to make a true statement of
his title and interest in the property, a creditor to whom real
estate had been set off on execution, and the time for the
debtor to redeem had not expired, represented the property
as *his,* and it was held that this was no such misrepresentation
or concealment as would avoid the policy. To the same ef-
fect is *Buffum's case,* in 10 *Cush.,* 540, and *Allen's case,* in
5 *Gray,* 384. The only objection that can be made in this
case is, that Deale *omitted* to state the true condition of his
title. But that the omission to state every fact in relation to the
title, does not avoid the policy, even in a *mutual* insurance
company, is not only abundantly shown by the cases already
cited, but is also sustained by *Coates & Glenn's case,* in 14
*Md. Rep.,* 298; by *Phillips' case,* 10 *Cush.,* 350; by *Loeh-
ner's case* in 17 *Missouri,* 247; by *Morrison's case* in 18 *Mis-
souri,* 262; by *Schell's case* in 29 *Penn. State Rep.,* 31.

If these views are correct, it is submitted that the judgment
in this case must be sustained.

BARTOL, J., delivered the opinion of this court :

The defence to this action, relied upon by the appellant,
rests upon the alleged misrepresentation or concealment by the
appellee, when the contract of insurance was made, of the true
nature and character of his title, or interest, in the property in-
sured.

In the application for insurance the appellee described the property as "HIS *property*," whereas, the evidence discloses that the whole fee-simple title was vested in his wife, Janeatta S. Deale, by a deed of conveyance dated the eighteenth day of July 1850, and that it so remained at the time the insurance was effected. For the purpose of establishing that the beneficial title was in the appellee, in the nature of a resulting trust, the evidence of George W. Jones and of Alexander Randall, was offered, and permitted to go the jury, this evidence is contained in the appellant's first and second bills of exceptions, which, as they present the same questions, may be considered together.

Implied or resulting trusts arise where a purchase is made by one person in the name of another. In *Hill on Trustees*, 91, the doctrine is thus succinctly stated, "Where, upon a purchase of property, the conveyance of the legal estate, taken in the name of one person, while the consideration is given or paid by another, the parties being strangers (in blood) to each other, a resulting or presumptive trust immediately arises by virtue of the transaction; and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds." Such trusts arise by operation of law, are not within the statute of frauds, and may be proved by parol. *Hill on Trustees*, 96. "If the person in whose name the conveyance of property is taken, be one for whom the party paying the purchase money is under a natural or moral obligation to provide, no equitable presumption of trust arises from fact of the payment of the money, but, on the contrary, the transaction will be regarded, *prima facie*, as an advancement for the benefit of the nominee. In that case, therefore, it will be for the party who seeks to establish a trust on behalf of the payer of the purchase money, to displace, by sufficient evidence, the presumption that exist in favor of the legal title," (*Ibid.*, 97.) In *Story's Eq.*, *Vol.* 2, *sec.* 1202, it is said, "If a parent should purchase in the name of a son, the purchase would be deemed, *prima facie*, as intended as an advance-

ment, so as to rebut the presumption of a resulting trust for the parent. But this presumption, that it is an advancement, may be rebutted by evidence manifesting a clear intention, that the son shall take as trustee." In section 1203, the same author says, "This presumption in favor of the child, being thus founded in natural affection and moral obligation, ought not to be frittered away by nice refinements. It is, perhaps, rather to be lamented, that it has been suffered to be broken in upon by any sort of evidence of a merely circumstantial nature." And in section 1204, "The like presumption exists in the case of a purchase of a husband in the name of his wife. Indeed, the presumption is stronger in the case of a wife than of a child; for she cannot at law be the trustee of her husband." See *Hill on Trustees*, 98, 101, 103, and authorities there cited.

Having thus stated the principles upon which the doctrine of a resulting trust depends, we proceed to consider the evidence offered in this case for the purpose of rebutting the presumption of law in favor of Mrs. Deale's title, and of establishing a resulting trust in favor of the appellee. In considering this evidence, we must throw out of view the testimony of Mr. Randall of the declarations made to him by Mr. Deale in 1854, four years after the deed; and also the conversation between Jones, the witness, and Mr. Deale, in 1852, which was two years after the deed was made to Mrs. Deale. These declarations were clearly inadmissible, for the purpose of affecting the title conveyed to Mrs. Deale by the deed of June 1850. In *Hill on Trustees*, 105, it is said, "Any evidence, however, which is used for the purpose of displacing the title of the nominee, unless it is founded on his own admission or declaration of trust, must be contemporaneous with the purchase." "*Subsequent* acts or declarations of the purchaser, or any other matter arising *ex post facto*, cannot be admitted for the purpose; although they be of the most unequivocal and conclusive description." Discarding the subsequent declarations of Mr. Deale, made to Jones and Randall,

then nothing remains except the contract of the 28th day of January 1850, made in California between Waters and Deale, and the fact that the purchase money was paid by Deale. This contract was abandoned, and a new contract afterwards made with Waters by Jones, for the purchase of the land at a different price; and, in fulfillment of this last contract, the deed of conveyance was made to Mrs. Deale by the direction of Jones, who, as he testifies, had the authority of Mr. Deale for so doing. The simple fact that the appellee paid the purchase money, as we have already seen under the authorities cited, could not in this case raise any presumption of a resulting trust in the appellee. In the opinion of this court, the evidence we have been considering, offered for that purpose, was insufficient in law, and ought not to have been allowed to go to the jury. It follows from what we have said, that the Circuit court erred in its ruling upon the appellant's first and second exceptions; and, for the same reasons, the first prayer of the appellee was erroneously granted.

Having disposed of the appellee's claim, so far as it rested upon a supposed resulting trust, the case stands simply upon the title under the deed of the 18th of July 1850. By the Act of 1842, chapter 293, section 1, any married woman was enabled to become "seized of land by direct gift or purchase in her own name and as of her own property." Under the deed, therefore, to Mrs. Deale, she was vested with the estate in fee: not, however, to her sole and separate use. In construing the Act of 1842, this court has said that, in such property, the husband retained his marital rights. 12 *Md. Rep.*, 108, 121, 294, 312. In this case, the appellee's rights were to a life estate, in right of his wife, with a right to the pernancy of the product and profits of the land during the coverture—and a contingent curtesy right in the event of his surviving his wife. See 2 *Md. Rep.*, 453, 454. The question, then, presented for our decision is, whether such an interest in the property is sufficient to entitle the appellee to recover, upon the contract of insurance sued on in this case? Beyond all question the

appellee had an insurable interest. 14 *Md. Rep.*, 297. *Angell on Fire and Life Ins.*, sec. 64. 2 *B. Munroe*, 50. The defence here is, that the appellee did not truly represent his title to the company. If this were an ordinary contract of insurance, made by a company insuring at its own risk, such an interest as the appellee's would be covered by an insurance of the property as *his;* and his omission to state the nature and extent of his interest, where no inquiry has been made on the subject, would not avoid the policy. · See 14 *Md. Rep.*, 298. *Angell on Fire & Life Ins.*, ch. 8, secs. 182, 183, 184, 185, 186, and *note* 9. 1 *Smith's Lead. Cases*, 633, 638, and cases there cited. But this contract was made with a mutual insurance company, and is obviously governed by very different principles and rules of construction. The contract of insurance constituted the appellee a member of the association, and bound him by its charter, constitution and by-laws; his assent to them was expressed in his application; they were incorporated in the policy, and became a material part of the contract.

By the fourth section of the charter, (Act of 1849, ch. 213, sec. 4,) all premium notes are declared to be liens on the real estate insured, which is held liable for the payment of the same, to meet losses that may be incurred by the company. In such case the title of the insured becomes a most important consideration of the contract, and a material misrepresentation or concealment in regard to it, will render the contract void. We do not entertain the opinion that this company might not, under its charter, insure such an interest as the appellee held in the property of his wife. On this question we think the case ·of *Allen vs. Mutual Fire Ins. Co.*, 2 *Md. Rep.*, 111, is strictly applicable. In this respect the two charters are identical. This company has "full power and authority to make insurance on any kind of property;" Act of 1849, ch. 213, sec. 1. "This language" the court said, in 2 *Md. Rep.*, 118, "is abundantly comprehensive, to include both real and personal estate, and all such interests in either, as the well settled principles of law recognise to be insurable interests;" and again, on page 123, "this company have the authority to insure whatever interest

are insurable, in ordinary fire insurance companies." To that extent the decision in *Allen's case* governs this, and, adhering to what was there decided, we are of opinion that the appellee had an insurable interest, which this company had the power to insure under its charter. We come now to consider the terms and conditions of the particular contract sued on, and also the effect of the representation by the appellee as to title. These questions did not arise in *Allen's case;* there was nothing in it to show any representation whatever as to title; or that the company was not fully informed of the nature and extent of the interest of the assured, (see 2 *Md. Rep.*, 124.) Here, however, we have before us the written application for insurance, in which the appellee calls the property "his property." This application is referred to in the policy, and upon it the company acted in making the contract, without any notice of the title of Mrs. Deale or of the limited nature of the appellee's interest.

We do not adopt the view contended for by the appellant, that the application for insurance, and the reference thereto in the policy, constituted a warranty, on the part of Deale, that he held the fee-simple title to the property unincumbered, the breach of which, by the existence of the legal title in Mrs. Deale, would render the contract void. Nor is there any express provision in the charter, constitution or by-laws, that in terms declares a policy to be void, where the title of the assured is not truly stated, or is of a limited nature, less than the fee, or incumbered. In this last respect this case differs from those in 7 *B. Monroe,* 470; 4 *Foster,* 259; 7 *Foster,* 157; and other cases of the same class, many of which have been cited in argument.

In our opinion, the representation made by the appellee as to title, was not, as we have before stated, a part of the contract, in the nature of a warranty, that he held the whole fee-simple title unincumbered, the breach of which would render the policy void. The whole defence therefore rests upon the alleged misrepresentation or concealment of the true nature and

7    v.18

extent of his interest, and of the title of Mrs. Deale. Whether such alleged misrepresentation or concealment will avoid the policy depends upon its materiality to the risk undertaken, and, in our opinion, the question of materiality is a question of fact to be submitted to the jury. 2 *Duer on Ins.*, 689, sec. 31. 14 *Md. Rep.*, 299. There is some conflict of authority on this question, but the ordinary rule is as we have stated; and we cannot, in this respect, distinguish this case from those in which that rule has been established and recognised. Having said that the appellee had an insurable interest, which this company had power to insure under its charter, the policy would attach unless the company had been induced to make it by reason of some misrepresentation or concealment of material facts with regard to the title, which, if they had been truly known by the company, would probably have influenced it in making the contract or estimating the risk. In the case of a mutual insurance company, where a lien is created on the property insured, a representation or concealment, as to title, may be material to the risk, which would not be so in an ordinary case. But its materiality is a question for the jury, and the court cannot assume it as matter of law.

Having thus stated the opinion of this court upon the several questions involved in this case, we proceed to pass upon the several prayers presented in the last bill of exceptions.

The first prayer of the plaintiff, as has been already said, was erroneously granted, it is based upon a supposed title in the appellee in the nature of a resulting trust, of which there was no evidence sufficient, in law, to go to the jury.

The plaintiff's second prayer was properly granted; it asserts, simply, that the title of Deale to the property in right of his wife was an insurable interest, sufficient to sustain the contract or policy, and taken in connection with the defendant's eleventh prayer, which was granted by consent, is free from objection.

The third prayer of the plaintiff was properly rejected; the company was not chargeable with notice of the state of the title disclosed by the land records.

For the reasons already stated in this opinion, we affirm the

ruling of the Circuit court upon the defendant's first, second, third and fourth prayers. We also affirm its action in granting the defendant's fifth, seventh, eighth and ninth prayers.

We think the defendant was entitled to the instruction asked for in the sixth prayer. We should not, however, reverse the judgment on account of its refusal, as the defendant had the benefit of the same instruction, in effect, by the granting of the ninth prayer. Still, as the case must be sent back, we deem it proper to say, that the defendant was entitled to ask for a specific instruction, directing the attention of the jury to the particular fact in which the alleged misrepresentation or concealment consisted.

The only remaining question presented by the exceptions, involves the competency of the witness Carman:—on this question we affirm the decision below. In the matter of filling up the application, and presenting it to the company, the witness was the agent of the appellee, and as such a competent witness.

*Judgment reversed and procedendo ordered.*

In the two other cases between the same parties, argued at the same time by the same counsel and before the same judges, actions of *assumpsit* were brought upon the contracts for additional insurance endorsed upon the policy, and *non-assumpsit* was pleaded in each case. These endorsements were not under seal, but simply signed by the secretary of the company, and state that the applications for additional insurance had been granted, subject to the terms and conditions set forth in the within policy. The same evidence was given, and the same exceptions, modified so as to apply to these cases, taken, as in the preceding case, with the additional exception, that in each of these cases the defendant objected to the plaintiff's right of recovery in the present form of action, but these objections the court overruled, and the defendant excepted, and the verdicts and judgments being against it, appealed.

On the part of the appellant it was argued, that these actions should have been in *covenant* instead of *assumpsit,* upon

Mutual Ins. Co. in Balt. County, *vs.* Deale.

the authority of *McGowan's case*, 16 *Md. Rep.*, 47; and 33 *Penn. State Rep.*, 221, *Franklin Fire Ins. Co., vs. Massey.* It was also argued, that as the appellee in the applications for these additional insurances, represented himself as holding "*the legal title*" to the property, all question as to a resulting trust is thrown out of view; that the appellee could not stand upon his interest as tenant by curtesy, because these insurances were effected after the Act of 1853, ch. 245, which protects the property of the wife from the debts of the husband, (12 *Md. Rep.*, 121, 312, *Schindel's cases,*) and the premium notes would not bind her interest in it; and again, that by these insurances *personal* as well as real estate was insured, and but one premium note given, which is in conflict with the fourth clause of the charter of the appellant.

On the part of the appellee it was insisted, that these cases differ from *McGowan's case*, inasmuch as there is no provision in this policy continuing it in force as a sealed obligation, as to and upon endorsements of additional insurances; that as to the other questions, these cases are the same as, and must abide the result of, the preceding case.

BARTOL, J., delivered the opinion of this court:

These appeals present the same questions as have been decided in the preceding case, between the same parties, and for the reasons assigned in the opinion filed in that, the judgments in these will be reversed and *procedendos* ordered. Upon the question growing out of the form of action, which did not arise in the preceding case, we are of opinion that the action of *assumpsit*, and not covenant, is the proper remedy on the contracts endorsed on the policy. These cases differ from *McGowan's case*, in 16 *Md. Rep.*, 47.

Here there is nothing in the original covenant, which continues it in force, as a specialty, binding the company by subsequent endorsements of additional insurance. They are new distinct contracts by parol. See 2 *Wharton*, 167.

*Judgments reversed and procedendos awarded.*

(Decided November 4th, 1861.)