(Decided July 15th, 1859.)

# FRANKLIN FIRE INS. CO. of PHILADELPHIA, *vs.* JOHN COATES and WM. C. GLENN.

The refusal of an Insurance Company to pay the amount of the loss, upon the ground that they were *not upon the risk*, is a *waiver* of the preliminary proof required by the policy.

The *lien* upon buildings held by material-men, under the mechanics' lien laws of this State, is an *insurable interest* in the property.

The material-man has a *subsisting lien* in the intermediate time between the furnishing of the materials and the expiration of the six months limited by the law for filing his claim, though no claim has been filed by him.

A condition in an insurance policy, that it shall be void if the party insuring his buildings or goods "shall cause the same to be *described* in the policy *otherwise* than as they *really are*, so as the same be charged at a lower premium than is herein proposed," relates to a *misdescription* of the *property*, and not to the character of the *title* or *interest* in it.

The *materiality* of the disclosure or concealment by which a policy is to be rendered void is a question of *fact*, which must be submitted to the *jury*, and a prayer omitting to do so is, for this reason, defective.

APPEAL from the Superior Court of Baltimore City.

*Covenant* upon a policy of insurance under seal, brought on the 7th of January 1854, by the appellees against the appellant. Plea, *non infregit*, with leave to introduce any matter of defence which might be pleaded or given in evidence under any other plea.

*Exception.* The policy, (admitted to have been duly executed,) is dated the 27th of August 1847, and was issued to

Coates & Glenn for $300, "on lumber piled on the northeast side of Pennsylvania Avenue, near Baker street, including some window frames stored in the yard. Baltimore, Maryland." The policy was to expire in two months, and was renewed, October 11th, for two months, "$300 on each of two three-story frame dwellings, on the same lot, carpenter's risk," and the amount insured was increased, November 1st, "$700 additional on each house," and was again renewed December 29th, for one month, "$1250 on each, including building materials." The policy contains, among others, these conditions:

"1st. If any person shall insure his or their building or goods, and shall cause the same to be described in the policy otherwise than as they really are, so as the same be charged at a lower premium than is herein proposed, such insurance shall be of no force.

"2nd. Property held in trust or on commission must be insured as such, otherwise the policy will not cover such property; and in case of loss the names of the respective owners shall be set forth in the preliminary proofs of such loss, together with their respective interests therein. Goods on storage must be separately and specifically insured."

"8th. All persons assured by this company, sustaining any loss or damage by fire, are forthwith to give notice to the secretary, and as soon as possible after to deliver in as particular an account of their loss or damage, as the nature of the case will admit of, and to produce to the company satisfactory proof thereof. All fraud or false swearing shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against the insurer on the policy."

"13th. Some of the following, being considered hazardous risks, will subject the assured to a higher rate of premium, those therefore desirous of insuring such must have the same inserted in their policies, which otherwise will be void;" and among the *special risks* thus enumerated are, "houses and vessels unfinished" and "lumber."

The other facts and proof in the case are sufficiently stated in the opinion of this court. The defendant then offered prayers in substance as follows:

1st. If the jury believe from the evidence, that the houses, upon which the insurance was effected, were not, nor was either of them, the property of the plaintiffs, at the time such insurance was effected, or at the time they were destroyed by fire, then the plaintiffs are not entitled to recover in this case.

2nd. That in order to entitle the plaintiffs to recover in this case, it is incumbent on them to satisfy the jury, from the evidence, that they had an interest, as owners, in the property, which constituted the subject matter of the insurance at the time such property was destroyed by fire, and that there is no evidence in the case of any such interest in the plaintiffs, and, therefore, they are not entitled to recover in this case.

3rd. If the jury find from the evidence, that the plaintiffs sold to George C. Davis the lumber out of which the houses and property which formed the subject matter of this insurance, were, in whole or in part, constructed, upon an agreement between them and Davis, that Davis would insure, for the benefit of the plaintiffs, the value of such lumber, in an insurance upon the lumber itself, or upon the houses which might be, in whole or in part, constructed therewith; and shall further find, that said lumber was used in the erection or construction of the houses mentioned in the evidence and described in the policy; and shall further find from the evidence, that Davis was the owner of the houses at the time they were insured and destroyed by fire, then the plaintiffs are not entitled to recover in this case, unless the jury shall also find from the evidence, that said agreement, between the plaintiffs and Davis, was made known to the defendant and assented to by it, and that there is no evidence in the cause of such knowledge or assent.

4th. If the jury find from the evidence, that the buildings insured were described in the policy otherwise than as they really were at the time of such insurance, so as the same might be charged at a lower premium than was proposed in the policy, or in order to conceal the extent of the risk to be run by the underwriter, then the insurance is null and void, and the plaintiffs cannot recover.

5th. That according to the true interpretation of the policy

it was incumbent on the plaintiffs to have insured the lumber which was put into the buildings, or their claim for the same, and such claim, specifically, in order to entitle the plaintiffs to recover, and that such interest of the plaintiffs is not covered by the terms of this insurance.

6th. That the plaintiffs are not entitled to recover, because the policy had expired by efflux of time before the fire occurred. (This prayer was abandoned in argument.)

7th. That the plaintiffs have offered no preliminary proof of loss or damage to their property, and therefore are not entititled to recover in this case.

8th. If the jury find from the evidence, that George C. Davis was the owner of the houses mentioned and described in the policy when the insurance was effected, and was such owner at the time the houses were destroyed by fire, and that the plaintiffs were not, at either of said times, the owners of said houses, then the plaintiffs are not entitled to recover in this case.

9th. That there is no evidence in the cause that any property belonging to the plaintiffs was destroyed or damaged by this fire, and, therefore, the plaintiffs are not entitled to recover.

10th. If the jury find from the evidence that George C. Davis was the owner of the property, the value of which is sought to be recovered in this case, on the 29th of December 1847, when the insurance was effected, and was the owner of said property at the time it was destroyed by fire; and shall further find from the evidence, that Davis, being such owner at the time the insurance was effected, procured the insurance to be effected in the names of the plaintiffs as owners, without disclosing to the insurer that he, Davis, was the owner of the property, then the insurance is void and the plaintiffs cannot recover in this case.

The court (LEE, J.) rejected these prayers and instructed the jury, that if they find from the whole evidence in the case, that the plaintiffs acted in good faith, and obtained the insurance from the defendant solely to indemnify any loss they might sustain to the extent of their interest in the property,

without any fraudulent concealment or misrepresentation on their part, in obtaining said insurance, then they are entitled to recover.

To the rejection of its prayers the defendant excepted, but did not except to the instruction given by the court.

The verdict was in favor of the plaintiffs for $1142.53, and costs, and from the judgment thereon the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Jno. P. Poe* and *St. Geo. W. Teackle* for the appellant:

The prayers of the appellant deny the right of the plaintiffs to recover.

1st. Because they offered no preliminary proof of the loss according to the condition of the policy.

2nd. Because they had no insurable interest in the property insured.

3rd. Because the policy is void for material concealment or misrepresentation in obtaining it.

1st. It is very clear that the failure to offer the preliminary proof required by the 8th condition of the policy is fatal to the plaintiff's right to recover, unless such proof has been *waived* by the company. 3 *Gill*, 176, *Edwards vs. Balto. Fire Ins. Co.* Has there been any such waiver? The only testimony in the case upon which an argument in favor of a waiver can be based, is that of F. H. Smith, the agent of the company, and this, we submit, does not show it. Nothing was said at any of the interviews spoken of by this witness, of the interest claimed by the plaintiffs, but, on the contrary, they admitted that the property belonged to Davis, and, in fact, abandoned the claim on the policy, satisfied that they had no remedy against the company. There was, therefore, clearly no waiver of preliminary proof as to the claim now made by these parties as lienors or equitable title-holders. 2 *Pet.*, 25, *Columbian Ins. Co. vs. Lawrence.*

2nd. At the time the policy was effected, and when the fire occurred, the whole legal and equitable estate in the pro-

37      v. 14.

perty, described in the policy, was in Davis alone, the plaintiffs not being owners thereof to any extent. An agreement was made between Davis and the plaintiffs, not to give them an insurable interest in the property, but that Davis would insure *his* property in *their names*, in order to secure them for the lumber they were to furnish for building the houses, and it is very clear that this agreement conferred upon the plaintiffs no insurable interest and no right to recover on this policy, unless it was disclosed to the company, and sanctioned by it, which was not done. 16 *Wend.*, 397, *Ætna Fire Ins. Co. vs. Tyler.* 1 *Arnould on Ins.*, 241. 2 *Phillips on Ins.*, 282. *Angell on Fire Ins.*, 101, 102, 109, 220. 16 *Pet.*, 495, *Carpenter vs. Washington Ins. Co.* They had, therefore, no insurable interest by virtue of their agreement with Davis. Had they any such interest as material-men under the mechanics' lien laws? Under the Act of 1838, ch. 205, no such lien exists until the claim for a lien is filed. 6 *Gill*, 27, *Carson vs. White.* That Act says, only, that " every building," &c., " shall be *subject*," that is, *liable* " to a lien," &c. The lien is *inchoate*, not *complete*, till the provisions of the law have been strictly complied with, and when, as in this case, the six months have passed, and the claim is not filed, the lien is gone *ab initio*, in the same manner as in case of the non-performance of any other condition subsequent. Again, if they had filed their claim under the law, and thus perfected their lien, the company, upon payment of the loss, would have been subrogated to their rights as lienors, (16 *Wend.*, 397,) and, having failed to do so, the underwriter is released; this rule of subrogation is conclusive upon the question of the existence or non-existence of an insurable interest, or lien under the mechanics' lien laws.

3rd. The policy was void, because of misrepresentation or concealment of material facts in obtaining it, and upon this point we insist:

1st. That the interest of the plaintiffs in the lumber which was put into the houses mentioned in the policy, or their claim for its value, ought to have been insured specially, or specifically, to entitle them to recover, according to the true inter-

pretation of the policy, and, not having been so insured, they cannot recover; and again, that the houses should have been specifically insured as *unfinished houses*, under the 13th condition of the policy. The renewal of the 29th of December, indicated to the insurers that the houses were *completed*, and yet the proof shows that they were then unfinished.

2nd. That Davis, being the owner of the property at the time he applied for and obtained this policy, and having represented to the insurer that it was the property of the plaintiffs, or having concealed from the insurer that it belonged to him, and having procured the insurance as the property of the plaintiffs, without disclosing his ownership thereof, and having concealed this from the insurer till after the property was destroyed by fire, such misrepresentation or concealment avoided the policy. The extent of the interest of the assured, affects the underwriters in taking the risk, and should be communicated at the time the insurance is effected; the nature and extent of the interest of the assured is *material* to the risk, and a concealment of this is fatal to the policy. 2 *Pet.*, 25, *Columbian Ins. Co. vs. Lawrence*, and same case in 10 *Pet.*, 507. 16 *Pet.*, 495, *Carpenter vs. Washington Ins. Co. Parson's Mercantile Law*, 488, 494, 513. 1 *Arnould on Ins.*, 487, 488, 495, 500, 501, 515, 537, 538. *Chitty on Cont.*, (6th *Am. Ed.*,) 684. 1 *Story's Rep.*, 57, *Carpenter vs. American Ins. Co.* 4 *Mason*, 390, *Ohl vs. Eagle Ins. Co.* 7 *Foster*, 149, *Hersey vs. Merrimack Co. Mutual Fire Ins. Co.* 17 *Penn. State Rep.*, 253, *Smith vs. Columbia Ins. Co.* 6 *Humph.*, 176, *Catron vs. Tenn. Ins. Co.*

*F. K. Howard* and *S. T. Wallis*, for the appellees, argued:

1st. That the appellant waived the necessity of preliminary proof by the terms of its refusal to recognize its liability or pay the loss. Smith's testimony shows, that the company put its refusal to pay on the ground that it was not *liable* for the loss. Now preliminary proof is only evidence of the extent of the loss, and when the company says it will not pay because it is not liable, it would be a farce to produce such proof. The whole question is, however, settled in the cases

of *Allegre vs. Maryland Ins. Co.*, 6 *H. &. J.*, 408, and *Edwards vs. Balto. Fire Ins. Co.*, 3 *Gill*, 176. See also 2 *Ohio, (N. S.,)* 452, *Hartford Prot. Ins. Co. vs. Harmer; Parson's Commercial Law*, 536, *note* 5.

2nd. That the appellees, at the time of taking out the policy, and when it was afterwards at the several times renewed, had, under their agreement with Davis, and as materialmen, under the mechanics' lien laws, a lien on the property as so insured, which it was competent for them to insure in the terms of the policy, and its several renewals, without any more specific description of such interest than the policy contains. They had a consummated equitable right, under the contract with Davis, and a *legal* right under the lien laws. The Act of 1838, ch. 205, sec. 13, expressly makes the debt for doing work or furnishing materials a *lien*, until the expiration of six months from the time the work is finished or the materials furnished, "*although no claim shall have been filed therefor*," and such lien is preferred to every other incumbrance attaching after the commencement of the building. Can there be a doubt that this is an insurable interest? If it had been a *mortgage* there could have been no doubt about it, and yet the mechanics' lien, under the statute, overrides *even a mortgage*. It is therefore a *legal* interest, which, under all the decisions, is insurable, and we submit, that the equitable interest, under the contract, was also an insurable one. Nor is it necessary that the assured should disclose to the insurer the nature and extent of his interest in the property insured. The decisions of the Supreme Court, cited on the other side to sustain their views on this point, have not been generally followed in this country, and are not regarded as law even to the extent to which they go. But they decide, what is every where the law, that the *materiality* of the concealment, as to title, as well as other matters, is a question of *fact for the jury*, and none of the prayers of the appellant leave this question to the jury. In support of these positions, both that the interest of the appellees was an insurable interest, and that the nature and extent of such interest need not be disclosed, see 2 *Am. Lead. Cases*, 550 to 557, 634 to 680;

1 *Arnould on Ins.*, 226, 227; *Angell on Fire & Life Ins.*, secs. 67, 182, 458; *Parson's Mercantile Law*, 509; 6 *G. & J.*, 372, *Thomas vs. Vonkapff*; 2 *Md. Rep.*, 122, *Allen vs. Mutual Ins. Co.*; 18 *Verm.*, 305, *Swift vs. Vermont Mutual Ins. Co.*; 1 *Wood & Minot*, 272, *Aldrich vs. Equitable Safety Ins. Co.*; 2 *Mass.*, 280, *Holbrook vs. Brown*; 3 *Sumner*, 132, *Hancox vs. Fishing Ins. Co.*; 1 *Hall*, 325, *Robbins vs. New York Ins. Co.*; 9 *Wend.*, 404, *Traders Ins. Co. vs. Robert.* 12 *Wend.*, 507, *Tyler vs. Etna Fire Ins. Co.*; 9 *Sergt. & Rawle*, 103, *Wells vs. Philadelphia Ins. Co.*; 8 *Humph.*, 684, *Delahay vs. Memphis Ins. Co.*; 3 *Barn. & Adol.*, 478, *Crowley, et al., vs. Cohen.*

3rd. That there was no improper or unlawful silence, concealment, or misrepresentation, by the appellees, or their agent, Davis, in procuring the insurance and its several renewals, and that in the absence of any specific inquiries, every thing was communicated to the appellant which the law or propriety required. The cases already cited fully sustain this position.

4th. That the prayers of the appellant are defective in form, and do not raise or properly present the questions designed to be raised and here discussed, and were therefore properly overruled.

BARTOL, J., delivered the opinion of this court.

The several questions presented by this appeal may be stated in the three following propositions:

1. Was the preliminary proof, required by the 8th condition of the policy, waived by the appellants?

2. Had the appellees any insurable interest in the property named in the policy?

3. Was there, in obtaining the insurance, any misrepresentation or concealment of facts material to the risk, which renders the policy void?

These propositions will be considered in the order in which they have been stated.

1. The testimony of Mr. F. H. Smith, the agent of the company, is, that a day or two after the fire, George C. Davis, who had obtained the policy, called at the office of wit-

ness, and informed him that the houses had been destroyed by fire, and demanded the amount of the loss, stating, at the time, that the said buildings belonged to him, Davis, and not to Coates & Glenn. The witness then informed Davis that the defendant had insured Coates & Glenn's property, and not the property of Davis, and that the defendant was not upon the risk, if the property insured and burned was the property of Davis, and that the defendant would not pay the loss to said Davis. That some day or two afterwards, one of the plaintiffs called upon the witness and asked for payment of their loss upon the buildings mentioned in the endorsements upon the policy, and that witness informed the plaintiff that the defendants had, by their policy, insured the property of Coates & Glenn, and not the property of George C. Davis, and that the property which had been insured as the property of Coates & Glenn, in said policy, was the property, not of Coates & Glenn, but of George C. Davis, as he, the witness, had learned from Davis since the fire, and that the defendant was not upon the risk, and would not pay the amount of the loss. That the plaintiff admitted that the houses insured were the property of Davis, and witness never afterwards heard from either of the plaintiffs, or from Davis, in regard to the loss. Upon cross-examination the witness stated, that both upon the application of Davis and of one of the plaintiffs, for the amount of the loss, the witness stated to both of the applicants that the defendant was not upon the risk, and would not pay the amount of the loss; that the defendants had, in their policy, insured plaintiff's houses, and not Davis', and that witness would probably have refused to receive any preliminary proof of said loss, if any had been offered to him; that no preliminary proof was offered to him; that the time for preliminary proof had not arrived, as it was only a day or two after the fire, and nothing was said by any one about it, but that if it had been offered, he thought he would have refused to receive it, the case being too clear in favor of the defendant not being on the risk, to receive preliminary proof of the loss. The witness further stated, upon reflection, that if preliminary proof of the loss had been offered to him, as agent of the defendant, either by Da-

vis or the plaintiff, who called on him, he would probably have received such proof and transmitted it to the company in Philadelphia, as his duty probably required. The witness, on cross-examination by the plaintiffs' counsel, then testified that he told the plaintiff, who called on the occasion after the fire, mentioned in his examination-in-chief: "The company won't pay. They are not on the risk. The witness added: "The position I took precluded the offer of preliminary proof on their part. I took the ground we had nothing to do with it."

This proof, in our opinion, clearly shows a waiver by the agent of the company, of preliminary proof.

In the case of *Allegre vs. Insurance Co*, 6 *H. & J.*, 408, a letter from the defendant, in which it was stated, "the company decline the payment, under a persuasion that the company are not answerable for the same," was a waiver of further preliminary proof. On page 413, the court say, "If they intended to refuse payment of the loss because the invoice, a customary part of the preliminary proofs, had not been laid before them, it was their duty so to have informed the insured, and their failure to do so, and the writing of such a letter, was a waiver of all further preliminary proofs." Applying the principle there decided, to the present case, we think the *seventh* prayer of the defendant was properly refused.

2. The second question for our consideration is, whether the appellees had an insurable interest in the property named in the policy?

The evidence shows that the property belonged to George C. Davis, and not to the appellees. Davis held, both at the time of the insurance and of the fire, the whole estate, legal and equitable.

The interest of the appellees in the premises, and for the loss of which they claim compensation under the policy, arose as follows: They were lumber merchants. Davis, a carpenter, purchased from them lumber for the purpose of building the houses mentioned in the policy. Being unwilling to furnish him the lumber upon his mere credit, it was agreed between them and Davis that he would insure, for their benefit, the lumber as they might furnish it, and the houses as the

lumber might, by degrees, be worked into them, or employed in their construction, so as to protect them, by said insurance, to the value of the lumber which they might so furnish. This arrangement was not communicated to the insurers. The policy was obtained by Davis, in the name of Coates & Glenn, and the insurance was first upon the lumber, and afterwards upon the two dwelling-houses. The lumber was furnished to Davis, and used by him in the construction of the houses, during a period extending from the 2d of August to the 29th of November 1847. On the 9th or 10th of January, before the buildings were finished, they were entirely destroyed by fire.

In our opinion, both at the time of the making of the policy and of the fire, the appellees had, as material-men under the statute, a lien upon the buildings to the amount of the lumber furnished by them to Davis, and used in their construction. It has been argued by the appellants that no lien exists until a claim is filed of record under the 10th and 11th sections of the Act of 1838, and for this construction, they rely upon the language of the Court of Appeals, in *Carson vs. White*, 6 *Gill*, 27, where it is said: "No mechanic has, in virtue of the Act of Assembly, a lien on the house which he has built or repaired, unless he has filed in the office of the clerk of Baltimore county court a statement of his demand, and, in that statement, has given not only the sum due, but also the nature or kind of work done, and the kind and amount of the materials furnished, and the time when the materials were furnished, and the work done." This language, taken by itself, would seem to furnish some ground for the appellant's argument. But an examination of the case will show that the question before the court was, the sufficiency of the claim filed in that case, and relied upon by the mechanic, and they decided that the provisions of the Act, in that respect, not having been complied with, the plaintiffs could not avail themselves of the remedies provided by the law.

The question we are now considering is, whether in the intermediate time between the furnishing of the materials and the time limited by law for filing the claim, there is a subsisting lien? This question did not arise in *Carson vs. White*.

It may, however, be decided by a brief reference to the provisions of the Act of Assembly. By the 13th section it is enacted, "That every such debt shall be a lien as aforesaid, until the expiration of six months after the work shall have been finished, or materials furnished, although no claim shall have been filed therefor; but such lien shall not continue longer than the said period of six months, unless a claim be filed as aforesaid, at or before the expiration of the same period."

*Carson vs. White,* was a case within the latter clause of this section. The case before us falls within the first clause, which gave to the appellees a lien upon the buildings at the time of their destruction by fire, notwithstanding no claim had been filed by them. Such a lien constituted an insurable interest in the property. This is abundantly established by all the authorities.

In *Wilson vs. Hill, 3 Metcalf,* 66, the Supreme Court of Massachusetts say, "An insurance on buildings against loss by fire, although, in popular language, it may be called an insurance of the estate, is, in effect, a contract of indemnity with an owner, or other person, having an interest in the preservation of the buildings."

Many cases on this subject are collected in the *American Leading Cases, 2 Vol.,* 550, (*4th Ed.,*) and the principle deduced from them, as correctly stated on page 553, is, "that any interest in real estate, or which would be impaired or injured by its destruction, may be made the subject of a valid insurance, although falling short of a title to the land." See *Hancox vs. Fishing Ins. Co., 3 Sumner,* 132. 1 *Arnould on Ins.,* ch. 10, sec. 105. 1 *Phillips on Ins.,* secs. 173, 175, 201, 204, 312, 351.

3. The last proposition is, whether there was any misrepresentation or concealment of any material facts, in obtaining the policy, which will avoid it.

1st. As to the description of the property. The first condition of the policy contains these words: "And if any person shall insure his or their building or goods, and shall cause the same to be described in the policy otherwise than as they really

are, so as the same be charged at a lower premium than is herein proposed, such insurance shall be of no force."

This clause we understand to relate to a misdescription of the property insured, and as having no relation whatever to the character of the title or interest in it. There is no evidence in the cause of any such misdescription as is contemplated by that clause, and, therefore, the fourth prayer could not be granted.

2. As to the statement of the title in the policy. It is argued by the appellant, that, in this case, the policy was taken upon the property as if Coates & Glenn were the owners of it, and that the omission to state the nature and character of the interest, was a violation of the first condition of the policy, or, if not within that condition, that it was a concealment of a fact material to the risk, which ought to have been communicated, and renders the policy void. We have already said that the first condition of the policy cannot be construed to relate to the title or ownership, but that it refers only to the description of the property itself.

There is some conflict of authority as to whether it is the duty of the assured, in a policy against fire, to communicate to the underwriter, in the first instance, and in the absence of any inquiry on the subject, the extent and character of his interest, when it is of a special or limited nature. In the case of the *Columbian Ins. Co. vs. Lawrence*, 2 *Peters*, 25, it was decided that such fact ought to be communicated, and the same principle was re-affirmed in 10 *Peters*, 507, when the case came before the Supreme Court on another occasion.

The same principle was announced in *Carpenter vs. Washington Insurance Co.*, 16 *Peters*, 495. On the other hand, the courts in this country have generally refused to give their assent to this principle. This will be apparent from an examination of the great number of cases on this subject collected and explained in the *American Leading Cases*, 2 *Vol.*, 637 to 642.

The ruling of the courts in this country has generally sustained the validity of such policies as the one we are considering, if they have been procured in good faith, even although

the assured has only a limited or partial interest in the property insured, and has not communicated that fact to the insurers.

It is not necessary, for the decision of this case, to express our opinion on this point; for, whether we adopt the views expressed by the Supreme Court of the United States on this question, or those of the courts of Massachusetts, New York, and other States, the result in this case will be the same. It is everywhere conceded, that the materiality of the disclosure or concealment is a question of fact which must be submitted to the jury. See 10 *Peters,* 516.

None of the prayers of the defendant present this question to the jury. They go upon the ground either that the appellees had no insurable interest, not having property in the building insured, as owners, or that the omission of the assured to communicate to the company the extent and nature of their interest in the building, rendered the policy void, whether material to the risk or not.

It follows, from what has been said, that none of the prayers of the defendant could properly have been granted, and there was no error in rejecting them.

No exception being taken to the instruction granted by the Superior Court, it is not before us for review in this appeal.

*Judgment affirmed.*

(Decided July 15th, 1859.)