BAILE *et al.*, *Appellants*, v. THE ST. JOSEPH FIRE & MARINE INSURANCE COMPANY.

1. **Insurance.** Both at common law and under the statute of this State, a verbal agreement to insure is binding, and in case of loss, will be specifically enforced against the insurer. Distinguishing *Henning v. United States Ins. Co.*, 47 Mo. 425.

2. ——: NATURE OF THE RISK MAY BE INFERRED FROM CIRCUMSTANCES. The only element of a valid contract of insurance not expressly agreed upon in this case was the risk. The insuring company, however, was limited by its charter to fire and marine risks, and the subject matter of the insurance in this case was a stock of goods in a store house. *Held*, that from this it could properly be inferred that the risk intended was fire.

3. **Verbal Contract to Issue Policy:** SPECIFIC PERFORMANCE. The method of enforcing specific performance of a verbal contract to issue a policy of insurance after a loss has occurred, is not to compel the issuance of the policy, but to decree payment of the money as if the policy had issued.

4. ——: CONSENT TO ADDITIONAL INSURANCE. It is no defense to an

| 73 | 371 |
|---|---|
| 33a | 508 |
| 73 | 371 |
| 35a | 436 |
| 35a | 525 |
| 73 | 371 |
| 43a | 528 |
| 73 | 371 |
| 104 | 192 |
| 73 | 371 |
| 106 | 378 |
| 73 | 371 |
| 54a | 381 |
| 73 | 371 |
| 56a | 366 |
| 73 | 371 |
| 57a | 7 |
| 73 | 371 |
| 127 | 519 |
| 73 | 371 |
| 63a | 93 |
| 73 | 371 |
| 66a | 209 |
| 73 | 371 |
| 135 | 200 |
| 73 | 371 |
| 72a | 65 |
| 73 | 371 |
| 81a | 199 |
| 73 | 371 |
| 89a | 322 |
| 73 | 371 |
| 101a | 9169 |

action to compel specific performance of a contract to issue a policy of insurance that the policy if issued would have contained a prohibition against additional insurance without the consent of the insurer written on the policy, and that the plaintiff had obtained additional insurance without such consent.

5. **Consent by Agent.** Where a policy contains a prohibition against additional insurance without the consent of the insurer written thereon ; if notice of such additional insurance be given to an agent of the insurer, and he assent thereto, it will be sufficient, though his assent be verbal only.

6. **Implied Satisfaction of a Mortgage.** The holder of a note received a mortgage with the understanding that he was to retain it as security for the payment of the note only until he could assure himself of the solvency of another party who was offered as surety. Having satisfied himself upon this point, he obtained the signature of the proposed surety to the note, and thereafter kept the note without satisfying the mortgage, of record. *Held*, that it was, nevertheless, discharged.

7. **Parol Evidence:** MORTGAGE. Parol evidence is admissible to show that a mortgage has been fully discharged ; or to explain or contradict the consideration clause.

8. **Contract to Issue Policy of Insurance:** SUIT FOR SPECIFIC PERFORMANCE: FAILURE TO FURNISH PROOFS OF LOSS. It is no defense to an action to compel specific performance of a contract to issue a policy of insurance, that the policy if issued would have contained a requirement that in case of loss the insurer should be forthwith furnished with proofs of loss, and that plaintiff had not complied with this requirement.

9. —— : —— : ——. If an insurance company whose agent has made a verbal contract to issue a policy, upon being applied to for the policy by the party entitled, after a loss has occurred, refuses to issue the policy on the ground that it is not liable on the contract, it cannot afterward defend on the ground that proofs of loss were not furnished in time.

10. **Practice in Supreme Court.** After errors had been assigned and joinder in error made, and the case had been argued before the court, the respondent, by an appendix to his brief, for the first time, called attention to the fact that the record was not properly certified, and asked that the appeal be dismissed on this ground. *Held*, too late.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

REVERSED.

This was a suit in equity brought by plaintiffs against defendant, and under the following circumstances: One Shotwell, the local agent of defendant at Warrensburg, solicited plaintiffs, who were merchants at that place, to take $2,500 insurance upon their stock of goods, to continue one year. Plaintiffs consented, paid the premium, and received from Shotwell the following receipt:

WARRENSBURG, Mo., December 5th, 1873.

Received of Baile & Ridenour $43.75, paid as premium on $2,500 insurance in the St. Joseph Fire & Marine Insurance Company of St. Joseph, for which I agree to deliver a policy.

E. H. SHOTWELL, Agent, etc.

There was a verbal understanding between Shotwell and plaintiffs that the $2,500 should be distributed as follows: $300 on millinery goods, $700 on ribbons, notions and fancy goods, and $1,500 on dress and dry goods. Plaintiffs' application and the premium paid were forwarded by Shotwell to the home office of the company at St. Joseph, but within a few days, and before the delivery of a policy, plaintiffs' store and stock were destroyed by fire. The day after the fire plaintiffs notified the defendant, who immediately sent its secretary to Warrensburg to inquire into the case. In the prosecution of his inquiries he took the affidavits of plaintiffs. Shortly after this, plaintiffs demanded a policy of defendant, who refused to issue one, and denied all liability for the loss on the ground that nothing but a written or printed policy, signed by the president and attested by the secretary, could impose a legal liability on the company, and none such had ever been issued. No formal proofs of loss were furnished to the

company until after the lapse of ten months, but no objection on that score was made by the company until the filing of the answer in this case. The answer denied liability on the ground that no verbal contract of insurance was binding on defendant under its charter and the laws of the State ; and further set up several affirmative defenses growing out of the character and conditions of the policy that defendant would have issued if it had issued any : (1) That the policy would have contained a prohibition against additional insurance without the consent of the defendant written on the policy ; and that there was a breach of such condition. (2) That the policy would have contained a condition against misrepresentations in the application ; and that there was a misrepresentation, in this, that it was stated in the application that the plaintiffs' stock of goods was unincumbered, when in fact there was a valid subsisting chattel mortgage thereon. (3) That the policy would have contained a condition that as soon as possible after a loss the insured should render a particular account of the loss duly verified ; and that this condition had not been complied with.

To the first of these defenses plaintiffs replied that they did inform defendant of the additional insurance, and that defendant should be estopped from availing itself of this defense, because it had not objected thereto at the time, and had omitted to indorse its consent on the policy. To the second defense plaintiffs replied that the mortgage which defendant alleged constituted the breach, was intended as security for a note made by plaintiff Ridenour, not until it matured, but only until the payee of the note, one Congdon, could assure himself of the solvency of one Glandner, who resided in Ohio, and who was proposed by Ridenour as personal security thereon ; and if his solvency was ascertained, his name on the note was to be sufficient security therefor, and the chattel mortgage was thereupon to cease to be a lien on said stock ; but that by mistake the mortgage was written as if security for the note until paid,

and the true defeasance was omitted; that inquiry was made and Glandner was found to be solvent, and his name was received and accepted by Congdon as ample security; that the function of the mortgage had been thereby accomplished, and although not discharged of record, the same constituted no valid lien or incumbrance on the stock. To the third defense plaintiffs filed a reply in the nature of a demurrer. The case was submitted to the court on these pleadings with the proofs adduced by the parties in support of their several claims, and there was a judgment for the defendant.

*Doniphan & Reed* and *Crittenden & Cockrell* for appellants.

1. Defendant had power to enter into a verbal contract. This power is derived from section 8 of the Corporation Law, which declares that " parol contracts may be binding upon aggregate corporations if made by agent duly authorized," and from section 1 of the Insurance Law, which provides that all companies organized under it shall have " full power and authority to make insurance against loss or damage by fire on every description of property or merchandise." Wag. Stat., pp. 290, 738. Section 8 of the latter act which provides that " all policies and contracts of insurance made by said company shall be subscribed by the president and attested by the secretary," does not restrict this power. It only provides a mode in which the power may be exercised, and it does not purport to be even an exclusive mode at that. The right to make a binding parol contract is not taken away expressly by said section 8. No negative words are therein used, and the leading idea of the section seems to be simply to provide that all contracts of insurance when completed must be signed by the president and attested by the secretary—telling who shall exercise the power when the contract is reduced to writing and completed, and not prohibiting any other ex-

isting legal form of contract. The section making parol contracts of aggregate corporations legal, being a part of the general law, is as much a part of the charter of defendant as is section 8 of chapter 67; and as section 8 grants no power in and of itself, and contains no repealing words, and is not necessarily inconsistent with the other section, a parol contract of insurance ought to be held good and binding. *Henning v. U. S. Ins. Co.*, 2 Dill. 26; *Trustees, etc., v. Brooklyn F. Ins. Co.*, 19 N. Y. 310; *New Eng. Ins. Co. v. Robinson*, 25 Ind. 540; *Walker v. Metropol. Ins. Co.*,56 Me. 371; *Relief F. Ins. Co. v. Shaw*, 94 U. S. 577; May on Ins., §§ 128, 43.

2. But even if a verbal contract of insurance be not binding upon this company, a preliminary contract by an agent, who has received the premium, to issue a policy will be binding and will be enforced in equity. *Post v. Ins. Co.*, 43 Barb. 363; *Union Ins. Co. v. Commercial Ins. Co.*, 2 Curtis 524; *s. c.*, 1 Am. Law Reg. (N. S.) 116; *Whitaker v. Ins. Co.*, 29 Barb. 312; *Constant v. Ins. Co.*, 3 Wall. Jr. 316; *Commercial Ins. Co. v. Union Ins. Co.*, 19 How. 319; *Ins. Co. v. Colt*, 20 Wall. 560; *Palm v. Medina Ins. Co.*, 20 Ohio 529; *Davenport v. Ins. Co.*, 17 Iowa 277; *Perkins v. Washington Ins. Co.*, 4 Cow. 645; *Kentucky Ins. Co. v. Jenks*, 5 Ind. 96; *Hallock v. Ins. Co.*, 26 N. J. L. (2 Dutch.) 268; *Franklin Ins. Co. v. Colt*, 2 Cent. Law Jour. 207; *Franklin Ins. Co. v. Taylor*, 52 Miss. 441; *s. c.*, 3 Cent. Law Jour. 633; May on Ins., §§ 565, 23; 3 Parsons on Contracts, 374, note k.

3. Equity, having jurisdiction to compel by specific performance the issuance and delivery of a policy (as shown by authorities cited in previous point) will, to avoid circuity of action, render judgment for the amount of the policy. May on Ins., § 565, note 1; 2 Curtis 524; 43 Barb. 351; 4 Cow. 645; *Carpenter v. Ins. Co.*, 4 Sandf. Ch. 408; 20 Ohio 529. These decisions but apply to the laws of insurance the well known rule that equity, when once possessed of a case, to avoid litigation, will enter the judgment to which the

party is finally entitled. *Real Estate Sav. Inst. v. Collonious*, 63 Mo. 290; *Holland v. Anderson*, 38 Mo. 55; *Corly v. Bean*, 44 Mo. 381.

4. The alleged failure of plaintiffs to notify the company of the additional insurance and to have the same indorsed on the policy, is no defense. 1st, Because, by not having issued the policy the company rendered the performance of this condition impossible. *Stewart v. Keteltas*, 36 N. Y. 388; *Smith v. Gugerty*, 4 Barb. 615; *The Mayor v. Butler*, 1 Barb. 327; 3 Johns. 531. 2nd, Because, at the most, no policy having been issued, nothing more could be required, in case of an additional insurance, than notice to the company, (*Eureka Ins. Co. v. Robinson*, 56 Pa. St. 257,) and such notice we did actually furnish to the company's agent.

5. There was no misrepresentation as to incumbrances. The chattel mortgage, though unsatisfied of record, was fully discharged and was no incumbrance. May on Ins., § 292; *Hawkes v. Ins. Co.*, 11 Wis. 188; *Newhall v. Ins. Co.*, 52 Me. 180; *Lycoming Ins. Co. v. Jackson*, 83 Ill. 302; s. c., 4 Cent. Law Jour. 456.

6. The fact that nearly ten months elapsed before proofs of loss were furnished will not defeat plaintiffs' recovery; 1st, Because immediately after the fire defendant instituted a very thorough and minute investigation as to the cause of the fire, the amount of the loss, the aggregate sum of insurance and all questions relating to the stock of goods and the said fire, and to assist in this purpose, examined under oath these plaintiffs. This examination inures to the benefit of plaintiffs. May on Ins., § 499; *Sexton v. Ins. Co.*, 9 Barb. 191; *Roumage v. Ins. Co.*, 13 N. J. L. (1 Green) 110. 2nd, Because defendant must be considered to have waived the proofs being furnished by refusing to issue a policy and denying all responsibility. *Tayloe v. Ins. Co.*, 9 How. 390; *McComas v. Ins. Co.*, 56 Mo. 573; *Franklin Ins. Co. v. Coates*, 14 Md. 285; *Ins. Co. v. McDowell*, 50 Ill. 120; *Edwards v. Ins. Co.*, 3 Gill 176; *Allegre v.*

*Ins. Co.*, 6 Har. & J. 408; *Protection Ins. Co. v. Harmer*, 2 Ohio St. 452; *Graves v. Ins. Co.*, 12 Allen 391; May on Ins., §§ 468, 469; Flanders on F. Ins., 542 to 545.

*H. E. Barnard* for respondent.

1. If the charter or statute under which an insurance company is created and operating prohibits parol and oral contracts, or points out the method of contracting, then it cannot follow any other method in making valid insurances or agreements, and so long as said contracts or agreements are executory, the company is not estopped from relying upon want of power as a defense. *Bissell v. R. R. Co.*, 22 N. Y. 285; *Henning v. Ins. Co.*, 47 Mo. 425; *Hart v. Ins. Co.*, 21 Mo. 92; *Mound City Mut. F. M. Ins. Co. v. Curran*, 42 Mo. 374; *Head v. Ins. Co.*, 2 Cranch 166 to 169; *Beatty v. Ins. Co.*, 2 John. 109; *Safford v. Wyckoff*, 4 Hill 446.

2. An oral insurance, an agreement to make an insurance or a contract to deliver a policy must be complete and must contain all the components of a valid insurance contract. 1st, Property insured; 2nd, Risk insured against, whether fire, marine, life, accident, health or any other; 3rd, Amount of insurance; 4th, Duration of policy, and 5th, Premium to be paid. If the evidence does not conclusively show each of these parts, the contract must fall the same in equity as in law, for equitable relief can never be granted when any essential ingredient of the agreement is wanting. In this case but two of the essential component parts are contained in the written receipt put in evidence by plaintiffs, (amount of insurance $2,500, and amount of premium $43.75,) and it is not such a contract as could be enforced by any court. *Tyler v. Ins. Co.*, 4 Rob. S. C. N. Y. 150; *Suydam v. Ins. Co.*, 18 Ohio 459; *Neville v. Ins. Co.*, 19 Ohio 452; *Baptist Church v. Ins. Co.*, 28 N. Y. 161.

3. Under the statute, (G. St. 1865, p. 356, § 8,) the company could make no valid oral agreement, and plaintiffs must rely for recovery upon the parol agreement contained in

the receipt in evidence in this case, and cannot graft oral components upon that parol agreement, and without doing so there is no contract which would have been binding even if made by the person who was authorized to contract or make agreements for defendant generally. In this case the receipt was signed by a local agent, and is not binding upon the company. *Henning v. Ins. Co.*, 47 Mo. 434; *Plahto v. Ins. Co.*, 38 Mo. 248; *Mound City Mut. Ins. Co. v. Curran*, 42 Mo. 374; *Cockerill v. Ins. Co.*, 16 Ohio 148; *Safford v. Wyckoff*, 4 Hill 446; 47 Mo. 472; *Dawes v. Ins. Co.*, 7 Cow. 462; 26 Mo. 162.

4. Plaintiffs are only entitled to recover (if at all upon this contract) upon full compliance with the conditions contained in the policies of defendant in general use and which it had power to issue, and was accustomed to issue on risks of a similar hazard and nature. And the same proofs of loss, disclosure of incumbrances and notice of additional or other insurance are required under this contract as would have been required if the policy had in fact been issued and delivered to them. *McCann v. Ins. Co.*, 3 Neb. 198; *Eureka Ins. Co. v. Robinson*, 56 Pa. St. 256.

5. It is admitted that the policies, contracts and agreements which the defendant had authority or was accustomed to make, contained the conditions set forth in defendant's answer, one of which required proofs of loss to be made forthwith in the event of loss, and in default of their being furnished by assured to defendant within a reasonable time, the loss should not be payable. Proofs of loss were not furnished to defendant until October 2nd, 1874, although the loss occurred on December 10th, 1873. This was not done within a reasonable time, and unless the proofs were waived by defendant, plaintiffs cannot recover. *Sims v. Ins. Co.*, 47 Mo. 54; *Sibley v. St. Paul F. & M. Ins. Co.*, 8 Reporter 808; *Commonwealth Ins. Co. v. Sennett*, 41 Pa. St. 161; *Blakeley v. Ins. Co.*, 20 Wis. 205; *Sherwood v. Ins. Co.*, 17 N. Y. S. C. (10 Hun) 593. Retaining the

proofs without objection is not a waiver of the objection that they were not served in due time. *St. Louis Ins. Co. v. Kyle*, 11 Mo. 278; *Noonan v. Ins. Co.*, 21 Mo. 81; *Knickerbocker Ins. Co. v. Gould*, 80 Ill. 388; *Swan v. Ins. Co.*, 52 Miss. 704.

6. Mere knowledge of other insurance upon the part of the agent not communicated to the company, is of no avail to insured if not indorsed on the policy, when there is a clause requiring such indorsement. *Forbes v. Ins. Co.*, 9 Cush. 470; *Schenck v. Ins. Co.*, 24 N. J. L. (4 Zabr.) 447; *Couch v. Ins. Co.*, 38 Conn. 181; *Hayward v. Ins. Co.*, 52 Mo. 181; *Sutherland v. Ins. Co.*, 31 Gratt. 176; *s. c.*, 7 Reporter 446; *Walsh v. Ins. Co.*, 73 N. Y. 5.

7. The representation that there was no incumbrance, when in point of fact there was an unsatisfied deed of trust on the property, is fatal to recovery by the plaintiffs. *Byers v. Farmers' Ins. Co.*, 35 Ohio St. 606; *s. c.*, 35 Am. Rep. 623; *Draper v. Ins. Co.*, 2 Allen 569; *Battles v. Ins. Co.*, 41 Me. 208; *Treadway v. Ins. Co.*, 29 Conn. 68; *Lowell v. Ins. Co.*, 8 Cush. 127; *Smith v. Ins. Co.*, 25 Barb. 497; *Gahagan v. Ins. Co.*, 43 N. H. 176; *Gould v. Ins. Co.*, 47. Me. 403; *Shoemaker v. Ins. Co.*, 60 Barb. 84; *Bowman v. Ins. Co.*, 40 Md. 620; *Gould v. Holland Ins. Co.*, 23 S. C. N. Y. (16 Hun) 538. Plaintiffs failed in their attempt to show that this deed was satisfied.

SHERWOOD, C. J.—Proceeding in the nature of a bill in equity for specific performance of a verbal contract to insure the goods and merchandise of the plaintiffs.

### I.

The validity of the contract is the first point demanding attention. The charter of the defendant company is that furnished by the general law. Chap. 67, Gen. St. 1865, p. 353. The concluding words of section 1 of that chapter require that the "conditions of all policies issued by such company, shall be written or printed on the face

thereof;" and section 8 of the same chapter provides that "all policies and contracts of insurance and instruments of guaranty, made by said company, shall be subscribed by the president, or president *pro tempore*, and attested by the secretary." Similar language to that just quoted was passed upon by this court in *Henning v. U. S. Ins. Co.*, 47 Mo. 425, and it was held that with such a charter and by-laws, the company could make no original and binding oral contract of insurance. In that case, however, section 6 of chapter 62, General Statutes 1865, was overlooked. That section, which has been on the statute book for over thirty-five years, (Stat. 1845, p. 232, § 8,) provides that: "Parol contracts may be binding on aggregate corporations, if made by an agent, duly authorized by a corporate vote, or under the general regulations of the corporation, and contracts may be implied on the part of such corporations, from their corporate acts, or those of an agent whose powers are of a general character." Passing upon the effect of this section it was held in the circuit court of the United States for the eastern district of Missouri, in an action between the forementioned parties, that construed in the light of the general law, the charter of the insurance company did not disable it from making a binding contract of insurance without writing. *Henning v. U. S. Ins. Co.*, 2 Dillon C. C. 26.

This view is certainly the better one, even where there is no such general provision as that above quoted, making oral contracts of aggregate corporations valid. It must now be considered as the well settled doctrine by the nearly universal concurrence of the authorities that oral agreements of insurance are enforceable, although the charter of the company contains similar provisions to those contained in chapter 67, *supra*. The principle underlying these decisions is this: That the right to make contracts of insurance, like any other right of contracting, exists as at common law, unless prohibited by statute; that the contract of insurance having its origin in mercantile law and

usage, the distinction which denies the power to enter into such a contract, except in particular modes and forms, is without foundation and repugnant to, and inconsistent with, that general capacity of contracting which the common law concedes to every person ordinarily competent to enter into binding engagements; that the provisions of the charter of a company that they shall have the right to make contracts of insurance by the signature of a president, etc., are regarded by the courts as merely enabling and not restrictive of the general power to effect contracts in any other mode not unlawful, dictated by convenience; and that "the distinction between a contract to insure or to issue a policy of insurance, and the policy itself, is obvious and constantly recognized by the courts." May on Ins., §§ 14, 22, 23, 128; *Kelly v. Commonwealth Ins. Co.*, 10 Bosw. 82; *Sanborn v. Fireman's Ins. Co.*, 16 Gray 448; *Trustees v. Brooklyn Fire Ins. Co.*, 19 N. Y. 305; *Relief Fire Ins. Co. v. Shaw*, 94 U. S. 574; *New England, etc., v. Robinson*, 25 Ind. 536; 56 Mo. 371; *Henning v. Ins. Co., supra.*

In view, however, of the broad statutory provisions heretofore cited, relating to the power of aggregate corporations to contract orally, all difficulty as to the power to make, in the present circumstances, an oral contract of insurance, vanishes. Besides that, section 8, *supra*, requiring the signature of the president, etc., uses no prohibitory words; relates not to agreements to insure, but only to policies when completed and ready for official signature. It is unnecessary to the proper determination of this case that the one already cited from our own reports, and greatly relied on by defendant, be overruled; but it is not unworthy of remark, that the utterances in that case were, for the most part, almost, if not altogether, *obiter*, since therein it is distinctly asserted that the contract in that instance was "nothing but a naked verbal agreement      *      * sued upon. This is denied, and there is no proof of it." So that that case could have been very briefly disposed of, as having no evidential foundation requiring

either judicial discussion or determination. Be that as it may, the doctrine announced in that case does not dominate this one, for the reason that that case was a suit at law on an alleged oral and completed agreement; this a proceeding in equity to compel that to be done which already upon sufficient consideration had been agreed should be done. And the case under discussion expressly recognizes the principle announced in *Commercial Ins. Co. v. Union Mutual Ins. Co.*, 19 How. 319, as well as in numerous other cases cited by plaintiffs, that equity will specifically enforce " agreements to make insurance."

## II.

Conceding, then, as we must, from the authorities and statutory provisions above noted, the power of the defendant company to make such an agreement to insure the goods and merchandise of plaintiffs as can be enforced in equity, was a contract possessing such necessary constituent elements as equity will recognize and enforce made in the case at bar? We have no doubt on this score and for these reasons : The evidence discloses a contract for a policy of insurance negotiated for, between plaintiffs and defendant's local agent; the reception of and receipt for the required premium; the subject matter insured, the amount of insurance and the duration of the policy. The only element of the contract of insurance left incomplete by the evidence is the risk insured against, but this is supplied by reasonable intendment and necessary implication arising from the nature of the business engaged in by the defendant company, fire insurance on land, and marine insurance elsewhere, and by the circumstances and situation of the property insured. And it is competent to infer the nature of the risk insured against. Thus it has been held that when the hazard is fire alone, and the subject an unfinished vessel never afloat for a voyage, and not a subject for marine insurance, a contract to insure must be regarded

as a fire insurance. *Eureka Ins. Co. v. Robinson,* 56 Pa. St. 256.

The evidence further discloses the forwarding of the premium thus received to the home office, the notification of the company by its local agent of the occurrence of the fire, the immediate coming to Warrensburg of Rice, the secretary of defendant and its special adjuster of losses, and his taking of the depositions of plaintiffs as to the cause of the fire, the amount of the goods burned and the aggregate sum of insurance, and the retention of the premium. If from these facts a contract to issue a policy cannot be implied on the part of the defendant, or even be regarded as well established by the evidence, it would be hard to conceive of a case furnishing sufficient *data,* to bind with obligatory force a recalcitrant corporation. And it would be intolerable that such corporation should ratify the acts of its local agent in manner as aforesaid, receive the consideration for issuing a policy, retain that consideration, and yet refuse to do that act for which that consideration was given.

### III.

We have already seen that a valid oral contract to insure having been made, equity will specifically enforce such initial, such preliminary contract. This is done where a loss has occurred, not by actually requiring that a policy of insurance be issued, but by a decree for payment of the loss as if a policy had issued. This method of affording relief, of administering remedial justice, proceeds upon the ground of avoiding circuity of action; (May on Ins., § 565, and cases cited,) and, doubtless, upon the further ground that equity, once possessed of a cause, will, before releasing its grasp on the *res,* avoid a multiplicity of suits by doing full, adequate and complete justice between the parties, by entering that judgment to which the party will be ultimately entitled. *Real Estate Savings Inst. v. Collonious,* 63 Mo. 290.

## IV.

The first special defense of defendant's answer cannot prevail. There being no policy of insurance issued, the indorsing of subsequent insurance on a non-issued policy can scarcely be regarded as within the domain of possibility. The law never requires impossibilities. Defendant failing and refusing to issue a policy according to contract, cannot visit upon plaintiffs the prejudicial results arising solely out of its own non-performance. *Eureka Ins. Co. v. Robinson*, 56 Pa. St. 256. Plaintiffs not being furnished with a policy of insurance containing the conditions of its issuance, it would be most unreasonable to require at their hands a compliance with those unknown conditions. No policy having been issued, nothing more, in justice to defendant, was requisite than that it be notified of subsequent insurance. *Eureka Ins. Co. v. Robinson*, 56 Pa. St. 256. This was done, as shown by the testimony, the next day after the insurance was effected, by informing the local agent of such subsequent insurance in the Planters.

## V.

The agent, when notified, according to the testimony of one witness, said " that was all right," and according to the testimony of another witness, made no objection; so that, even had there been a policy of insurance actually issued, this conduct of the agent would have rendered the notice of subsequent insurance equivalent, in the circumstances, to an indorsement on the policy of the fact contained in such notice. The decided tendency of modern adjudication is in this direction, and the company is held estopped from insisting on a forfeiture of the policy, because the stipulation referred to has not been literally complied with. May on Ins., § 370; *Hayward v. Ins. Co.*, 52 Mo. 181; *Pelkington v. Ins. Co.*, 55 Mo. 172.

## VI.

The second special defense is as unmaintainable as the

first.   The testimony shows very clearly that though technically incorrect, the answer given that there was no mortgage on the insured property was actually true; and the evidence, when carefully examined, shows no conflict on this point.   That evidence discloses that the deed of trust was given for a special purpose, and only for that purpose, *i. e.*, to remain as a security for the note given by Ridenour to Congdon, for the latter's interest in the goods, until communication was had with Ohio, the indorsement of Glandner on the note obtained, and Congdon should be satisfied with the solvency of the indorser.   This communication with Ohio took place; Crittenden & Cockrell, the attorneys for Congdon, employed by him for that purpose, opened a correspondence with persons in that state, ascertained, as required, that Glandner was solvent and responsible; had the note indorsed by Glandner, returned it to their client about the 1st day of September, 1873, who retained it in his possession without objection, though he did not enter satisfaction of the deed of trust.   In these circumstances, the deed must be held as satisfied, and as no longer a subsisting incumbrance at the time plaintiffs applied for insurance.   Congdon's conduct on this occasion after what had passed, must be held tantamount to an admission that he was satisfied with Glandner as indorser, and that the deed of trust had served its purpose.   1 Glf. Ev., § 197.

## VII.

If the note of Ridenour had been paid prior to the last named period, no one would doubt the competency of parol evidence to show that fact.   If competent in that case, then competent also in this.   It is always competent to show by verbal evidence that a written agreement is "totally discharged."   1 Greenlf. Ev., § 302; May on Ins., § 290; *Hawkes v. Ins. Co.*, 11 Wis. 188.   Again, the consideration of the deed of trust, as expressed on its face, is to secure the note, but the law is well settled in this State,

that you may, by verbal testimony, explain or contradict the consideration clause in a deed; such clause only possessing the force and character of a receipt. *Fontaine v. Boatman's Sav. Inst.*, 57 Mo. 561; *Hollocher v. Hollocher*, 62 Mo. 267. No importance is to be attached to the date of the deed of trust being subsequent to the note. This is fully explained by the evidence as well as the fact that the deed of trust, through mistake of the scrivener, was drawn to extend over a longer period of time than that intended by the parties.

## VIII.

The failure of plaintiffs to furnish formal proofs of loss cannot avail defendant, and for these reasons: It would be most unreasonable that plaintiffs be held bound to comply with the condition of a policy to notify the company forthwith of any loss, when that company, by its own failure to comply with its contract, and issue the promised policy, prevented the plaintiffs from knowing that condition. If the company would insist upon lack of complete performance in this particular, this can only be done when they make complete performance possible, or at least interpose no obstacle in the way of such performance. 56 Pa. St., *supra.* The company cannot be allowed to say to plaintiffs: "If we had issued you a policy it would have contained a certain condition, and as you have not complied with that condition which the policy we would have issued would have contained, therefore, you cannot recover." This is certainly a most remarkable defense to interpose.

## IX.

Besides, the defendant must be held as having waived the proofs being furnished by refusing to issue a policy, and denying all responsibility. *Tayloe v. Ins. Co.*, 9 How. 309, and cases cited; *McComas v. Ins. Co.*, 56 Mo. 573; May on Ins., §§ 468, 469; *Franklin F. Ins. Co. v. Coates*, 14 Md.

285. It must be conceded that the formal proofs of loss offered in evidence by plaintiffs were only evidence of the fact that they were furnished to defendant and no more. *Newmark v. Ins. Co.*, 30 Mo. 160. But there was other evidence in the cause showing the extent of plaintiffs' loss.

## X.

A caudal point, not presented in oral argument, nor in defendant's printed brief, is found appended thereto, to the effect that this appeal should be dismissed because the record is not properly certified. It is too late after both parties have treated the transcript as a record, after errors have been assigned and joined thereon, to raise this point now. We reverse the judgment and remand the cause. NORTON and RAY, JJ., concur; HOUGH and HENRY, JJ., dissent.